IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JANET R. ROBINSON,

           Plaintiff,

v.                                          CIVIL ACTION NO. 3:12-0981

QUICKEN LOANS INC.;
WELLS FARGO BANK, N.A.; and
JOHN DOE HOLDER,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Quicken Loans, Inc.'s, Motion to Dismiss. ECF No. 11. For the following reasons, the Motion is **DENIED**.

**I.    Background**

Plaintiff Janet Robinson brought this action in the Circuit Court of Cabell County, West Virginia, against Defendants Quicken Loans, Inc., ("Quicken"), Wells Fargo Bank, N.A., and John Doe Holder ("Defendants"). ECF No. 1, Ex. 1. Defendant Quicken, with consent of Defendant Wells Fargo, N.A., removed the case to this court. ECF No. 1.

Plaintiff alleges three[1] counts of illegal loan practices relating to a November 2003 mortgage refinancing loan obtained from lender Quicken Loans and serviced by Wells Fargo Bank, N.A. First, that the home secured loan was an unconscionable contract, because it had an adjustable rate mortgage, increased Plaintiff's monthly loan payments, had an annual fee, and exceeded the value of the home. Complaint, ¶¶ 22-27. Second, that the home secured loan was

---

[1] Although the Complaint states four counts, Plaintiff voluntarily dismissed Count IV in her Response. See ECF No. 19, at 2, n. 1.

illegal under West Virginia law because it exceeded the fair market value of the property, in violation of W. Va. Code 31-17-8(m)(8). *Id.*, ¶¶ 29-30. Third, that Defendant Quicken engaged in fraud during the lending process. *Id.*, ¶¶ 31-38. Defendant Quicken moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has not stated a claim upon which relief can be granted. *See* ECF No. 11.

## II. Standard

In ruling on a motion to dismiss, the Court must take the factual allegations in the complaint in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."). However, the plaintiff must allege more than mere "labels and conclusions," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III. Unconscionable Contract

Plaintiff claims that the mortgage loan contract executed in 2003 is unconscionable, challenging both the activity surrounding the loan origination and the terms of the loan. Defendant moves to dismiss this claim, arguing that Plaintiff fails to plead sufficient facts to state a plausible claim for relief.

Under West Virginia law, an unconscionable contract claim must demonstrate two types of unconscionability: procedural and substantive. *State ex rel. Johnson Controls, Inc., v. Tucker*,

No. 11-1515, 2012 WL 2226342 at *6 (W. Va., Jun. 13, 2012). "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract . . . [s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." *Id*. at *6-*7. "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Id*.

### (A) Procedural Unconscionability.

Plaintiff alleges that the loan contract was procedurally unconscionable. Procedural unconscionability involves

> a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

*Id*. at *6. In this case, Plaintiff states a claim for procedural unconscionability. Although Plaintiff does not allege that she was age-limited or illiterate, she does claim to be an unsophisticated consumer, presented with a loan bearing terms unlike those she requested. Complaint at ¶ 2, 14. She sought a fixed-rate loan, not a home equity loan, but received an adjustable-rate home equity loan, to which she was "instructed" to add her automobile loan. *Id*. at ¶¶ 13, 14, 19, 32, 33. Defendant, a sophisticated financial entity, explicitly reassured her that

3

despite the differences between the loan Plaintiff requested and the loan she was presented with, her monthly payments would not increase. *Id.* at ¶ 10. These changes and misrepresentations raise significant questions as to whether there were "hidden or unduly complex contract terms," and "whether each party had a reasonable opportunity to understand the terms of the contract." *See Tucker*, 2012 WL 2226342, at *6. Accepting the facts in Plaintiff's Complaint as true, she states a plausible claim for procedural unconscionability.

### (B) Substantive Unconscionability

Plaintiff also alleges that the loan contract was substantively unconscionable. "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." *Id.* at *6. Plaintiff here alleges that Defendant originated a loan for over $80,000, without obtaining a certified appraisal that might have revealed a true home value of $33,500. Complaint at ¶¶ 11, 16, 17. With a mortgage so greatly exceeding the value of her home, Plaintiff is unable to refinance or to sell the house. *Id.* at ¶¶ 19, 27. Additionally, Plaintiff alleges that Defendant intentionally misrepresented the effect of the adjustable-rate mortgage: although Defendant stated that Plaintiff's payments would not increase, the mortgage actually allowed for an adjustable rate of up to 18%. *Id.* at ¶ 16,26.

Although no single definition of substantive unconscionability exists, *see Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 288 (W. Va. 2011), *vacated on other grounds sub nom. Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1204 (2012), the general inquiry is whether "the terms of a contract are unreasonably favorable to the more powerful party." *Id.* In determining whether a contract is substantively unconscionable, courts consider factors such as "the commercial reasonableness of the contract terms, the purpose and effect of

4

the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id*. at 287. Plaintiff alleges that Defendant, the more powerful party, issued a loan for more than twice the actual value of the collateral property, based on an unofficial valuation, then convinced Plaintiff to accept an adjustable rate mortgage with an interest rate of up to 18%—while assuring Plaintiff that these terms would not cause Plaintiff's monthly loan payments to increase. These facts, taken as true, demonstrate the one-sidedness, commercial unreasonableness, and public policy concerns that may form a substantive unconscionability claim.

Plaintiff's Complaint adequately pleads both the procedural and substantive elements of an unconscionability claim. Defendant's motion to dismiss this claim is **DENIED**.

### IV.     Illegal Loan

Plaintiff next claims that the loan contract was an illegal loan. West Virginia prohibits the making of a mortgage loan for an amount exceeding the fair market value of the property on the date the latest mortgage loan is made. W. Va. Code § 31-17-8(m)(8). According to her Complaint, Plaintiff was offered a mortgage for $81,800 based on a home valuation of $84,350; in fact, at the time of the mortgage (2003), her home was worth $33,500. Complaint, ¶¶ 11-12. Defendant moves to dismiss this claim under the *Iqbal* and *Twombly* standards as "conclusory," and also argues that even if the claim is sufficiently pleaded, it is brought too late. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

Defendant argues that the claim is time-barred because it is governed by the two-year statute of limitations set forth in W. Va. Code § 55-2-12. Applying this time limit, Defendant argues that Plaintiff's claim expired in two years after the 2003 loan was made, in 2005. Defendant also asserts that if the Court applies the discovery rule, which allows for a claim to run from the time its holder was on notice of it, Plaintiff was on notice in 2005, and her claim

expired in 2007. In support of this argument Defendant attaches to its motion a form "statement of adverse action" sent by Defendant to Plaintiff in 2005, denying a request for a loan modification because of "insufficient collateral." ECF No. 11, Ex. 9. Defendant argues that this statement put Plaintiff on notice of her claim.

### (A) Sufficiency of Pleading

The Court finds that the claim is sufficient pleaded: Plaintiff asserts a sufficient factual and legal basis for relief. She states the value of the mortgage, the fair market value of her home at the time, and asserts that she was not aware of the difference between the two until 2011. Complaint, ¶¶ 11, 12, 21. Although Plaintiff does not give the details of the 2011 retrospective valuation, the Court accepts well-pleaded facts at this stage as true: Defendant may seek discovery on the adequacy of Plaintiff's 2011 valuation at a later phase.

### (B) Statute of Limitations

Finding that Plaintiff's claim is sufficiently pleaded, the Court turns to the issue of whether Plaintiff's claim is time-barred. Defendant argues that the appropriate statute of limitations for Plaintiff's W. Va. Code § 31-17-8(m)(8) claim is the two-year "catch-all" statute of limitations set forth at W. Va. Code § 55-2-12. Plaintiff responds that the appropriate statute of limitations is instead the ten-year statute of limitations provided for contract actions in W. Va. Code § 55-2-6. The Court declines to determine the applicable statute of limitations at this time, because it is not clear when any such limitation began to run, and so the claim may be viable under either statute. Defendant argues that the claim arose in either 2003, when the loan was made, or in 2005, when it claims Plaintiff was put on notice of her claim by the mailing of the form letter "statement of adverse action." ECF No. 11, Ex. 9. Whether this notice was sufficient

to inform Plaintiff of her claim under the discovery rule is also not yet properly before the Court, however, because consideration of the Notice is inappropriate at this stage in the case.

### (1) Consideration of Documents Outside the Pleadings

Generally, when documents outside the pleadings are presented to and accepted by the court in considering a motion to dismiss, the motion must be converted into one for summary judgment, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d). However, a Court may consider a document outside the pleadings in determining whether to dismiss the complaint, without converting the motion into one for summary judgment, if the document was "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (permitting the consideration of a document where "[Plaintiff] explicitly referred to the [document], and its . . . claims are based on the alleged misrepresentation made in that document.").

In this case, Defendant attaches eleven documents to its Motion to Dismiss, and argues that they may be considered at this stage in the proceedings because they are integral to and explicitly relied upon in the Complaint. *See Am. Chiropractic Ass'n*, 367 F.3d at 2334; *Womack v. Wells Fargo, N.A.*, 1:11-cv-104, 2011 U.S. Dist. LEXIS 154324 at *10 (N.D.W. Va., Nov. 17, 2011) (The Court "considered the loan documents integral to and relied on in the Complaint, including the DOT [deed of trust] and the Notes, without converting the motion into one for summary judgment."). In this case, the Court finds that the loan documents (Exs. 1-7) and the deed of trust (Ex. 11) are documents integral to and relied upon in the Complaint, and considers them when reviewing the pending motion, without converting that motion into one for summary judgment. The Court does not consider Exhibits 8 and 10. Exhibit 9 requires further discussion.

Exhibit 9 is a "statement of adverse action" sent to Plaintiff by Defendant in 2005. While the Court believes that the basic loan documents are intrinsic to and relied upon in the Complaint, and may therefore be considered at the motion to dismiss phase, the 2005 "statement" does not fall within that category.

The question of which documents may be considered at the motion to dismiss stage of a case arises frequently in mortgage litigation. Courts often consider basic property documents, *see, e.g.*, *Mosley v. Wachovia Mortgage Corp.*, 5:10-cv-1203, 2011 WL 4344029 *3, n. 4. (S.D.W. Va., Sept. 14, 2011) (deed of trust), and sometimes consider other related documents, including communications regarding the loan, without converting a motion to dismiss into one for summary judgment. *See, e.g.*, *Nicdao v. Chase Home Finance*, 839 F.Supp.2d 1051, 1064 (D. Alaska 2012) ("original mortgage documents, the documents related to Plaintiff's request for a loan modification, various communications between Plaintiff and [Defendant], and several foreclosure notices."). The determination of which documents may be considered is case-specific and may involve factors such as whether a document is contested, and whether a document is specifically referenced in the Complaint. *See Koontz v. Wells Fargo, N.A.*, 2:10-cv-0864, 2011 WL 1297519 at *7 (S.D.W. Va., Mar. 31, 2011) (refusing to consider communications one party claims were not sent); *In re Spurlock*, 3:10-cv-1252, 2011 WL 2469830 (S.D.W. Va., Jun. 17, 2011) (considering a letter sent from defendant's counsel to plaintiff, which was specifically referenced in the complaint). In this case, Plaintiff does not rely on or specifically mention the "statement of adverse action" (Ex. 9) in her complaint, and it is not "integral" to her Complaint in the same fashion as the basic loan documents. Of course, the Complaint does raise the general issue of when Plaintiff became aware of the alleged gap between the actual value of her home and the valuation used in the making the loan. That the

Complaint raises this general issue does not, however, permit the Defendant to selectively attach one of what may be many documents relevant to the issue, while avoiding the fuller picture provided by the discovery process.

Taking Plaintiff's well-pleaded allegations as true, her claim may be within either of the proposed statutes of limitations. The Court therefore **DENIES** Defendant's Motion to Dismiss Plaintiff's illegal loan claim.

### V. Fraud

Plaintiff's fraud claim alleges that Defendant misrepresented two key facts during the loanmaking process: that the loan's interest rate would not rise, and that Plaintiff's home had a value of more than $80,000. Complaint, ¶¶ 32, 33. In fact, the interest rate did rise, and Plaintiff's home had an actual market value of $33,500. *Id.* at ¶¶ 10, 12, 16, 33. Plaintiff also alleges that Defendant "suppressed from Plaintiff the true terms of the loan and the risks associated with the actual loan terms." *Id.* at 34. Defendant moves to dismiss this claim as insufficiently pleaded under Fed. R. Civ. P. 12(b)(6), and as time-barred.

Under West Virginia law, the essential elements of a fraud claim are "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Lengyel v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981). Plaintiff's fraud claim alleges two separate fraudulent acts.

#### (A) Misrepresentation of Interest Rates

Plaintiff first alleges that "prior to closing, a representative of Quicken told Plaintiff that the payments were not fixed, but that the payments would not rise because interest rates had not increased for twenty years. Plaintiff relied on this representation." Complaint, ¶ 10.

9

Defendant argues that Plaintiff fails to state a claim because it was not reasonable to rely upon Defendant's representation that neither Plaintiff's payments nor the nationwide interest rate would not increase. Defendant argues that these statements were opinions, and were contradicted by statements in the written loan contract and accompanying documents. However, examining Plaintiff's allegations regarding the transaction as a whole, Plaintiff may have reasonably relied on Defendant's representations. Plaintiff states that she asked for a fixed-rate loan, but was instead presented with an adjustable rate loan, and explicitly reassured by Defendant that this change would not increase her payments. Defendant is an experienced national lender, Plaintiff is an unsophisticated consumer, and adjustable-rate mortgages are relatively complex consumer financial arrangements. It is plausible that Plaintiff reasonably relied on Defendant's assurances. Defendant's Motion to Dismiss is **DENIED** as to this claim.

### (B) Misrepresentation of Home Value

Plaintiff next claims that Defendant engaged in fraud by misrepresenting the value of her home. Defendant argues that Plaintiff could not reasonably rely on its representations about her home's value, because a statement of home value is only an "opinion," and because one written record of the valuation, a report prepared by "RadianExpress," disavows any warranties as to its accuracy. ECF No. 11, Ex. 1.

As with Defendant's representations regarding the effect of an adjustable-rate mortgage, Plaintiff may be able to demonstrate that she could have reasonably relied upon Defendant's representations regarding her home's value. The RadianExpress report (Ex. 1), which may have been only part of Defendant's representations regarding the home's value, purports to make an informed statement about the value of a particular property. Defendant's use of the valuation may have indicated that sophisticated financial organizations rely on such industry-specific

calculations, evidence that a reasonable individual might also do so. Although Defendant argues that the home valuation is simply an "opinion," and as such, may not reasonably be relied upon, it is not clear that this industry-prepared, property-specific valuation document is the kind of "opinion" on which Plaintiff was not entitled to rely.

Defendant also argues that the RadianExpress statement of valuation used to prepare the loan contains "limitations on warranties," and thus could not reasonably be relied upon. However, such language is insufficient to bar any possibility that Plaintiff reasonably relied on Defendant's representations regarding the home's value. The preparer of that document, a service called RadianExpress, did include language limiting warranties, but Plaintiff's fraud claim attacks Defendant's overall representation as to the value of the property and its ability to support a mortgage, not just the RadianExpress statement. Plaintiff has, therefore, stated a plausible claim for fraud based on Defendant's representations of her home's 2003 value.

### (C) Statute of Limitations

Defendant argues that both of Plaintiff's fraud claims are time-barred. Defendant argues that Plaintiff's claim for fraud based on the adjustable rate mortgage is time-barred, because Plaintiff was put on notice of her potential claim when her monthly payments increased in 2004. However, assuming (without deciding) that the two-year statute of limitations in W. Va. Code §55-2-12 applies to this claim, the Court cannot conclude that Plaintiff's claim is time-barred. Even if Plaintiff was put on notice of her claim by an increase in her monthly payments, it is unclear when the increase in payments would have become sufficiently material to form a basis for a fraud claim.

Defendant also argues that Plaintiff's claim for fraudulent misrepresentation of her home's value is time-barred. For the same reasons that Plaintiff's claim for an illegal loan

cannot be dismissed as time-barred, Plaintiff's fraud claim may not be dismissed as time-barred. The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's fraud claim.

## VI. Conclusion

For the above reasons, the Court **DENIES** Defendant's Motion to Dismiss. ECF No. 11. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 24, 2012

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE