IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JANET R. ROBINSON,**

    **Plaintiff,**

v.                                      Case No.: 3:12-cv-00981

**QUICKEN LOANS, INC.,**
**WELLS FARGO BANK, N.A., and**
**JOHN DOE HOLDER,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the Court is the Plaintiff's Motion to Quash Subpoenas (ECF No. 46) and Request to Convert Portions of Said Motion to a Motion for Protective Order (ECF No. 62). The Court **GRANTS** the Motion to Convert (ECF No. 62) and addresses the substance of the unresolved discovery issues below. The parties have fully briefed the issues, and the undersigned finds that additional oral argument is unnecessary for their resolution. Accordingly, for the reasons that follow, the Court **GRANTS**, in part, and **DENIES**, in part, Plaintiff's Motion to Quash or for Protective Order (ECF No. 46) as set forth herein.

**I.**    **Analysis**

This civil action arises from Plaintiff's claim that she was the victim of a predatory lending scheme carried out by the Defendants in the form of an unwise high-interest home-financing agreement entered into by Plaintiff in November 2003. According to Plaintiff, she was an unsophisticated consumer who was induced by

Defendant Quicken Loans, Inc. to refinance her home mortgage for an amount far in excess of its value and pursuant to misleading and unconscionable terms that were significantly detrimental to Plaintiff's financial interests.

In the course of discovery, Quicken Loans served subpoenas duces tecum on ten financial institutions and one former employer of Plaintiff seeking a variety of records. Plaintiff moved to quash the subpoenas or for a protective order prohibiting Defendant from obtaining *in toto* the records sought by the subpoenas.

In regard to employment records, Defendant seeks any employment contracts; all documents reflecting payments made to Plaintiff, including deductions and withholdings; all documents reflecting hire and termination dates; and all documents showing the dates and lengths of any unpaid leaves of absence taken by Plaintiff. Defendant seeks these records for the period of June 1, 1995 through the present. (ECF No. 46-3 at 3). In regard to financial records, Defendant seeks all applications for credit; all documents showing the terms and conditions of credit extended; all documents showing payment history of any credit extended; all documents pertaining to loans given to Plaintiff and secured by her home; all documents pertaining to the valuation of the home; all communications with appraisers of the home; all documents exchanged with Plaintiff; all documents reflecting communications with Plaintiff; and all account statements for various credit cards obtained by Plaintiff.[1] Defendant placed no time parameters on most of the financial information, except for limiting the credit card account information to January 1, 2003 through the present. (ECF No. 46-1 at 3-4, 15).

---

[1] Defendant served three different versions of subpoenas on the financial institutions. The first set was served primarily on mortgage lenders and requested 9 categories of documents ("Type 1 subpoenas"). (ECF No. 46-1 at 3-4). The second set was served primarily on credit card lenders and requested 5 categories of documents ("Type 2 subpoenas"). (ECF No. 46-1 at 22). The final subpoena was served on PNC Bank and requested 16 categories of documents ("PNC subpoena").

Defendant argues that these documents are relevant to the issues of Plaintiff's financial sophistication in November 2003, the nature and extent of her injuries, and her duty to mitigate damages. Plaintiff responds that the requests seek irrelevant information, are overly broad and burdensome, and are designed to harass her.

"Before addressing the merits of Plaintiff's Motion, the Court must first determine whether Plaintiff has standing to attempt to quash the applicable subpoenas duces tecum." *Singletary v. Sterling Transport Company, Inc.,* 2012 WL 5449687 (E.D.Va. Nov. 7, 2012) (discussing the basis for standing and collecting cases). The undersigned concludes that Plaintiff has a personal right or privilege in her employment records and, thus, has standing to move to quash the subpoena duces tecum seeking those records. However, Plaintiff arguably has no personal right or privilege in her financial records and, thus, no standing to move to quash the subpoenas for banking and financial records. *See Robertson v. Cartinhour,* 2010 WL 716221 *2 (D.Md. Feb. 23, 2010) (citing *United States v. Miller,* 425 U.S. 435, 440, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1975). Nonetheless, Plaintiff has now modified her motion to include a request for a protective order; consequently, the undersigned will consider the validity of all of the subpoenas under Federal Rule of Civil Procedure 26. *Singletary,* 2012 WL 5449687.

Rule 26(b)(1) permits a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. "While the Federal Rules of Civil Procedure do not define 'relevant information,' the Federal Rules of Evidence define it as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Boykin Anchor Co., Inc. v. Wong* 2011 WL 5599283 at * 2 (E.D.N.C. November 17, 2011), *citing United Oil Co., v. Parts Assocs., Inc,* 227 F.R.D.

404. 409 (D.Md. 2005). Still, admissibility under the Federal Rules of Evidence is not the guideline for relevancy in the context of discovery. Relevancy in discovery is broad in scope, because "[d]iscovery is of broader scope than admissibility, and discovery may be had of inadmissible matters." *King v. Conde,* 121 F.R.D. 180, 194 (E.D.N.Y. 1988); *see, also, Caton v. Green Tree Services, LLC,* 2007 WL 2220281 (N.D.W.Va.) (the "test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence."); *Carr v. Double T Diner,* 272 F.R.D.431, 433 (D.Md.) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case"). For purposes of discovery, then, information is relevant, and thus discoverable, if it "'bears on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Although 'the pleadings are the starting point from which relevancy and discovery are determined ... [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.' Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes. Therefore, courts broadly construe relevancy in the context of discovery." *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted).

Discovery that seeks relevant information may nevertheless be restricted or prohibited if necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Likewise, on motion or *sua sponte,* the court may limit the frequency and extent of discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the

issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The party opposing discovery has the obligation to submit evidence supporting its claims that the requests are unduly burdensome, oppressive, or improperly invasive. To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D.Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D. Fla.2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."). However, under Fed. R. Civ. P. 45(c)(3), the "undue burden category 'encompasses situations where the subpoena seeks information irrelevant to the case.'" *Singletary,* 2012 WL 5449687 (citing *Cook v. Howard,* 2012 WL 3634451 *6, n. 7 (4th Cir. Aug. 24, 2012). Accordingly, a party opposing discovery sought by subpoena may also demonstrate undue burden by sufficiently articulating how the requested information is irrelevant, even when accounting for the expansiveness of permissible discovery. With this framework in mind, the undersigned has assessed the

subpoenas duces tecum for relevancy, burdensomeness, breadth, oppressiveness, annoyance, and embarrassment.

## II. Order

### A. Employment Records

Defendant seeks Plaintiff's employment contracts, wage information, dates of employment, and dates of unpaid leave, arguing that they are relevant on the issues of Plaintiff's sophistication and damages. Defendant emphasizes Plaintiff's allegations that the home-financing agreement offered by Quicken Loans was unconscionable and that the financial burden created by the illegal, fraudulent, and unconscionable terms of the agreement caused her to suffer worry, stress, annoyance, and inconvenience. In Defendant's view, by making these claims, Plaintiff's employment and financial histories become fair game for discovery.

Certainly, when examining whether a contract is unconscionable under West Virginia law, the Court must assess the relative sophistication of the parties. *See Quicken Loans, Inc. v. Brown*, ___ S.E.2d ___, 2012 WL 5897495 (W.Va. Nov. 21, 2012); *Herrod v. First Republic Mortgage Corp. Inc.*, 218 W.Va. 611, 625 S.E.2d 373, 379 (W.Va. 2005). Although the undersigned can find no case outlining the precise factors that are probative of a party's sophistication, common sense dictates that the terms and conditions of a party's employment may have some bearing on that individual's level of financial intelligence. Therefore, the undersigned finds that employment contracts are relevant. Plaintiff has not claimed any privilege in these contracts, and employment agreements seldom contain embarrassing or highly personal provisions that would provide a separate basis for prohibiting their discovery. In light of Plaintiff's representation that she can recall no employment contracts, the undersigned further

finds that requesting their production is not overly burdensome or oppressive to Plaintiff.

In addition, the dates of Plaintiff's employment and her wage information are relevant to her ability to pay the amounts due under the home-financing agreement; information that arguably bears on the degree of stress, worry, inconvenience and annoyance suffered by Plaintiff. Conceivably, the greater Plaintiff's income, the greater her ability to meet financial obligations and, consequently, the less intensely she should worry about making the payments under the home-financing agreement. Accordingly, the undersigned finds that documents reflecting Plaintiff's income during the relevant time frame are also discoverable.

On the other hand, the undersigned agrees with Plaintiff that documents detailing every deduction, every reimbursement, and every day of unpaid leave are not particularly relevant to either party's claims or defenses. Any substantial deductions or unpaid leave should be reflected in the 1099 or W-2 forms documenting Plaintiff's wages. Given that Defendant will have access to Plaintiff's wage information since the inception of the home-financing loan, any significant discrepancies can be identified and explored with Plaintiff at her deposition. Moreover, the potential for embarrassment or oppression from the disclosure of irrelevant or confidential information contained in other employment-related records, including documentation of unpaid leave, outweighs the apparent benefits of the information; particularly, when considering the needs of the parties and the importance of the documents in resolving the issues.

Therefore, the Court **DENIES** Plaintiff's motion to quash the subpoena in its entirety but **ORDERS** the Defendant to modify its subpoena to Plaintiff's former employer, Highmark West Virginia Inc., as follows:

1.      Documents related to payments, withholdings, deductions and unpaid leave shall be limited to a request for Plaintiff's 1099 and/or W-2 forms for the years of 2003-2011;

2.      Documents showing dates of hire and termination shall be limited to a request for a simple written verification by Plaintiff's former employer of her dates of hire and termination;

3.      Employment contracts may be requested as originally stated in the subpoena; and

4.      Requests for the remaining documents outlined in the subpoena are prohibited at this time.

Should discovery of this information give rise to a good faith belief that additional documentation is needed from the employer, Defendant shall request leave of court to serve a supplemental subpoena. In the motion for leave, Defendant shall state with specificity the documentation sought and the basis for the request. Plaintiff will have seven (7) days thereafter to contest the motion for leave.

### B.      *Financial Information*

Defendant again argues that applications for credit, information involving loans secured by Plaintiff's home, and the terms and conditions of any loan agreement or credit extended to Plaintiff are relevant to Plaintiff's level of financial sophistication and her duty to mitigate damages. Defendant further contends that valuations of the relevant property, both by Plaintiff and third parties, are relevant to the Defendant's statute of limitations defense and touch on the legitimacy of Plaintiff's claim that Quicken Loans used a fraudulently inflated property assessment to induce Plaintiff to refinance her home mortgage. Finally, Defendant asserts that account payment

histories, as well as credit card transaction records, are relevant to Plaintiff's duty to mitigate damages. To the contrary, Plaintiff contends that none of this information is relevant and the document requests are overly burdensome, invasive, and intended to harass her.

Under the broad understanding of relevancy in discovery, Plaintiff's financial history "bears on ... or reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Kidwiler,* 192 F.R.D. at 199. Moreover, Plaintiff has not identified a particular privilege that attaches to these documents. Plaintiff argues that she had no duty to mitigate damages in view of the nature of the wrongs allegedly committed by Defendants, but Plaintiff supplies no legal authority directly on point or unconditionally supportive of such a position. However, the undersigned agrees with Plaintiff that the subpoenas, as written, are unnecessarily broad and intrusive and, therefore, should be limited to effect the ends of justice.[2] Defendant has failed to place reasonable time limitations on many of the requests and seeks documents, such as detailed credit card transaction records, that are unlikely to result in the discovery of admissible evidence. Moreover, to the extent that Defendant seeks voluminous records of Plaintiff's credit card purchases, the proportionality analysis of Fed. R. Civ. P. 26(b)(2)(C)(iii) should be considered. The undersigned finds that the benefit of such discovery is far outweighed by the likelihood that predominantly irrelevant, highly personal, and potentially embarrassing information will be disclosed, thus resulting in an undue burden on Plaintiff.

---

[2] The undersigned does not find persuasive Plaintiff's argument that the discovery requests should be prohibited in their entirety because they will result in her counsel expending excessive time and expense in reviewing the produced documents. Plaintiff fails to provide any evidentiary foundation for such a claim. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008). In addition, given that Plaintiff is not the party required to produce the requested documentation, an argument based on undue expense is naturally more difficult to support.

Therefore, the Court **GRANTS** Plaintiff's motion for a protective order, in part, and **ORDERS** the Defendant to reissue subpoenas duces tecum to the financial institutions, which incorporate the following limitations:

1. Credit applications and documents reflecting the terms and conditions of credit extended to Plaintiff, as set forth in paragraphs 1 and 2 under "Documents Requested," in the Type 1 subpoenas and the PNC subpoena, shall be limited to the time period of January 1, 1998 through June 30, 2011;

2. Credit applications and documents reflecting the terms and conditions of credit extended to Plaintiff, as set forth in paragraphs 3 and 5 under "Documents Requested," in the Type 2 subpoenas, shall be limited to the time period of January 1, 2003 through June 30, 2011;

3. Defendant shall not request the production of detailed account statements or records of credit card transactions. Instead, Defendant shall limit its request for documents pertaining to payments of credit cards or other credit obligations of Plaintiff to payment histories or similar account summaries and shall be further limited to the time period of January 1, 2004 through June 30, 2011. (To replace paragraph 3 under "Documents Requested" in the Type 1 subpoenas and the PNC subpoena; paragraphs 1, 2, and 4 under "Documents Requested" in the Type 2 subpoenas);

4. Defendant shall not request all loan documents pertaining to the Subject Property; instead, Defendant shall limit its request to (1) applications completed by or on behalf of Plaintiff for loans to be secured by the Subject Property; (2) documents showing the terms and conditions of any such loan given; and (3) the payment history of each such loan. (To replace paragraph 4 under "Documents Requested" in the Type 1 subpoenas and the PNC subpoena);

5.     Documents reflecting the estimated or appraised value of the Subject Property, regardless of the source of the valuation, may be requested. (To replace paragraphs 5, 6, and 7 under "Documents Requested" in the Type 1 subpoenas and paragraphs 5, 6, 7, 12, 13, 14, 15, and 16 under "Documents Requested" in the PNC subpoena); and

6.     Defendant shall not make blanket requests for the remaining documents. (Eliminates paragraphs 8 and 9 under "Documents Requested" in the Type 1 subpoenas and paragraphs 8, 9, 10, and 11 under "Documents Requested" in the PNC subpoena).

Should discovery of this information give rise to a good faith belief that additional documentation is needed from some or all of the financial institutions, Defendant shall request leave of court to serve a supplemental subpoena. In the request for leave, Defendant shall state with specificity the documentation sought and the basis for the request. Plaintiff will have seven (7) days thereafter to contest the motion for leave.

The Clerk is instructed to provide a copy of this Order to all counsel of record.

**ENTERED:** December 5, 2012.

_____
Cheryl A. Eifert
United States Magistrate Judge