## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JANET R. ROBINSON,

                Plaintiff,

v.                                CIVIL  ACTION  NO.  3:12-0981

QUICKEN LOANS INC.;
WELLS FARGO BANK, N.A.; and
JOHN DOE HOLDER,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending are Defendant Quicken Loans Inc.'s objections, ECF No. 117, to the magistrate judge's memorandum opinion and order dated February 11, 2013, ECF No. 106.  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the objections.

### I.      BACKGROUND

Plaintiff Janet Robinson filed this action in the Circuit Court of Cabell County, West Virginia, against Defendants Quicken Loans, Inc. ("Quicken"), Wells Fargo Bank, N.A., and John Doe Holder.  Compl., ECF No. 1-1.  Quicken, with consent of Wells Fargo, N.A., removed the case to this Court in April 2012.  ECF No. 1.  This case arises from Defendants' alleged predatory lending and loan servicing practices.   Plaintiff is a West Virginia resident who claims to be unsophisticated in financial matters.  Compl. ¶ 2.  Quicken is in the business of originating home loans.  According to Plaintiff, Quicken induced her to refinance her home mortgage for an amount far in excess of the home's value and pursuant to misleading and unconscionable terms.

For the past six months, the parties have been engaged in an active and contentious discovery process.   Quicken's objections pertain to the memorandum opinion and order entered by United States Magistrate Judge Cheryl A. Eifert on February 11, 2013.   ECF No. 106.   Two discovery motions in particular are the subject of the instant dispute: Plaintiff's motion to compel Quicken to produce complete responses to discovery requests, ECF No. 84, and Plaintiff's motion to compel Quicken to produce a witness for deposition, ECF No. 87.   In her motion to compel complete responses, Plaintiff argues that Quicken failed to produce: (1) the company's financial records; and (2) the names of other Quicken borrowers for whom the company used the same property valuation service as it did for Plaintiff.[1]

In the second motion to compel, Plaintiff seeks an order requiring Quicken to produce a corporate representative to give deposition testimony regarding the ownership and transfer of Plaintiff's loan, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.   In connection with that motion, Plaintiff also moved for reimbursement of counsel's expenses associated with that deposition.   This particular discovery dispute arose from the following series of events.   In late September 2012, Plaintiff wrote to Quicken regarding scheduling a corporate representative to be deposed on six enumerated topics, including the ownership of the loan and any agreements related to loan transfers.   Wagner email, Sept. 28, 2012, Ex. A, ECF No. 87-1.   Quicken responded on October 1, 2012, seeking clarification as to four of the topics, but not questioning the two topics at issue here.   Ward email, Oct. 1, 2012, Ex. B, ECF No. 87-1.   Plaintiff filed a notice of deposition on October 8, 2012, seeking a representative to testify as to the same topics discussed in counsel's prior correspondence.   ECF No. 47.   After Quicken failed to produce a witness or identify an agreeable date for the deposition, Plaintiff filed a motion to compel on November 14,

---

[1] Plaintiff alleges that Quicken obtained an inflated valuation of her property from a service called RadianExpress.com.   Compl. ¶ 11.

2012.   On November 28, 2012, Quicken notified Plaintiff that it would make available a corporate representative for deposition on January 8, 2013.   During this time period, Quicken did not seek clarification on the noticed topics of the loan ownership or loan transfer agreements.   On January 3, 2013, Quicken filed objections and responses to Plaintiff's notice of deposition, claiming that the topics were overly vague such that it could not identify and adequately prepare a witness to testify regarding those matters.   ECF No. 79.   Plaintiff wrote to opposing counsel on January 7, 2013 to address Quicken's vagueness claim and explain the "issues regarding loan transfer and ownership."   Wagner email, Jan. 7, 2013, Ex. 1, ECF No. 99-1.   The deposition proceeded as scheduled the following day, whereupon the corporate representatives were unprepared to testify to the topics of loan ownership and loan transfer agreements as clarified in Plaintiff's email the day before.   Now Plaintiff once again moves to compel the production of a competent witness and also seeks reimbursement of travel expenses incurred as a result of the additional deposition.

## A.     The Magistrate's Order and Quicken's Objections

The magistrate judge's order first addressed Plaintiff's request for records documenting Quicken's income and financial status.   The parties apparently agreed that this request was premature at this stage of the proceedings.   The order therefore requires Quicken to produce the following at the scheduled pretrial conference: copies of its last two state and federal income tax returns, and detailed statements of net worth and income statements for the three years up to and including the date of the pretrial conference.   ECF No. 106 ¶ 2.   The order next grants Plaintiff's request for production of the names, addresses, and phone numbers of West Virginia borrowers who obtained a loan originated by Quicken during 2003 and whose appraisal was determined by use of the same valuation system as used for Plaintiff's property.   *Id.* ¶ 3.   The magistrate judge determined that this information is relevant to Plaintiff's claim and granted Plaintiff's motion to

3

compel, over Quicken's objection that the estimated $13,000 cost of production was overly burdensome.  Finally, the order required Quicken to make available for deposition a corporate representative to testify regarding the ownership and transfer of Plaintiff's loan.  *Id.* ¶ 4.  The magistrate judge found that Quicken had sufficient notice prior to the deposition to identify a representative versed in those topics.   Because Quicken's actions necessitated another scheduled deposition, Plaintiff's counsel was instructed "to submit her expenses to the Court for further consideration of her motion for reimbursement."  *Id.*

Quicken filed objections, arguing that "Plaintiff is not entitled to the additional documents and information she requests—especially at Quicken Loans' expense."  ECF No. 117 at 1. Specifically, Quicken asks this Court to:

> (1)    [deny] Plaintiff's motion to compel the production of Quicken Loans' confidential and sensitive financial records, subject to revisiting the issue, if necessary, only after liability has been determined and Plaintiff makes a *prima facie* case that she is entitled to punitive damages and Quicken Loans indicates that it will contest an otherwise constitutional award of punitive damages based on its ability to pay;

> (2)    [deny] Plaintiff's motion to compel the production of the names, addresses, and phone numbers of non-party West Virginia borrowers who had their loans originated by Quicken Loans using the same automated valuation service as used to originate Plaintiff's loan in 2003 or, alternatively, condition[] the discovery on Plaintiff's payment of the costs given that this information regarding non-parties, if relevant at all to Plaintiff's claims, is greatly outweighed by Quicken Loans' burden in procuring the information; and

> (3)    [deny] Plaintiff's motion for reimbursement of counsel's travel expenses, if any, relating to the second Rule 30(b)(6) deposition of Quicken Loans on topics that Plaintiff previously failed to notice and describe with reasonable particularity in accordance with her obligation under the rules.

*Id.* at 2.  With this background in mind, the Court now turns to the applicable legal standards and the parties' arguments.

## II.    ANALYSIS

### A.    Standard of Review

Quicken moves for review pursuant to Federal Rule of Civil Procedure 72(a), which provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days . . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).  The "clearly erroneous" standard is "deferential and findings of fact should be affirmed unless the reviewing court's view of the entire record leave the Court with 'the definite and firm conviction that a mistake has been committed.'"  *Fed. Election Comm'n v. Christian Coal.,* 178 F.R.D. 456, 460 (E.D. Va. 1998) (quoting *Harman v. Levin,* 772 F.2d 1150, 1153 (4th Cir. 1985)).  "When . . . review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard."  *Powershare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 15 (1st Cir. 2010) (citations omitted).  "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard."  *Id.*

### B.    Quicken's Financial Documents

Quicken argues that the magistrate judge should have abstained from any ruling with respect to the production of Quicken's financial records at this stage.   Although the order does not require production until the date of the pretrial conference, Quicken states that production may be inappropriate at that time as well.   Quicken argues that Plaintiff must first show a viable claim for punitive damages (by making a prima facie showing for punitive damages) before she is entitled to the financial records she seeks.   Plaintiff agrees that she must establish a prima facie case for

5

punitive damages, but argues that she has made such a showing by surviving a motion to dismiss her fraud claim, for which she claims punitive damages.

District courts within the Fourth Circuit do not agree as to what—if any—showing must be made before a plaintiff is entitled to pretrial discovery of financial statements relevant to a punitive damages claim.   In the District of Maryland, a magistrate judge found that "a majority of courts hold that pretrial discovery of financial statements relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages."   *EEOC v. Envtl. & Demolition Servs., Inc.*, 246 F.R.D. 247, 249 (D. Md. 2007).   In that case, the magistrate cited cases from five district courts outside the Fourth Circuit, all of which concluded that plaintiffs need not establish a prima facie case of entitlement to punitive damages before allowing discovery of a defendant's financial statements.   *Id.* at 249-50.   The magistrate acknowledged that other courts required some showing of entitlement to punitive damages, although "these courts almost uniformly have required less than a prima facie showing."   *Id.* at 250.

Cases from the judicial districts in North Carolina, meanwhile, require a prima facie showing.   *See Water Out Drying Corp. v. Allen*, No. 3:05-CV-353, 2006 WL 1642215, at *1 (W.D.N.C. June 7, 2006) (ruling that "[tax] returns are relevant to the subject matter in dispute only after the plaintiff has made a prima facie showing that it is entitled to punitive damages"); *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02-CV-00146, 2004 WL 444570, at *2 (M.D.N.C. Feb. 24, 2004) (plaintiffs demonstrated that defendant's tax returns were relevant where plaintiff survived motion for summary judgment).

In this district, the cases support the requirement that a plaintiff demonstrate her claim for punitive damages is viable before discovery of a defendant's financial worth.   In *Chesapeake*

6

*Appalachia LLC v. Mountain V Oil & Gas, Inc.*, No. 2:11-CV-00207, 2012 WL 4045729 (S.D. W. Va. Sept. 13, 2012), Judge Johnston bifurcated the proceedings, agreeing with the defendant's proposal to conduct discovery on its wealth only after the plaintiff survived summary judgment on the claims for which punitive damages applied.   *Chesapeake Appalachia*, 2012 WL 4045729, at *4.   Judge Johnston approved of Magistrate Judge Stanley's conclusion that "it is premature to permit discovery of extensive proprietary information and documents [including profit and loss statements] at a point in this litigation when it is not clear that the claim for punitive damages is viable."   *Id.*   Magistrate Judge VanDervort additionally has concluded that information related to a defendant's financial worth is discoverable prior to trial, but after the presiding district judge denied the parties' cross-motions for partial summary judgment and allowed the case to proceed. *George Golf Design, Inc. v. Greenbrier Hotel, Inc.*, No. 5:10-CV-01240, 2012 WL 5285410, at *3 (S.D. W. Va. Oct. 23, 2012).

This Court agrees with those authorities requiring plaintiffs to make a prima facie claim for punitive damages before being entitled to discovery of a defendant's financial records.   As noted above, the parties in this case agree that such a showing must be made, though they disagree as to what satisfies a prima facie claim in this context.   To make a prima facie claim for punitive damages in order to be entitled to discovery of a defendant's financial worth, this Court concludes that a plaintiff must produce some factual evidence in support of her claim.   Despite Plaintiff's argument to the contrary, the Court concludes that Plaintiff did not clear this hurdle by surviving

the earlier motion to dismiss.[2]   To dispose of that motion, the Court merely concluded that the complaint properly stated a claim for relief, and that the factual allegations sufficiently supported that claim.   ECF No. 36.   There was no evidence before the Court to support those factual allegations.   Consequently, Plaintiff has the burden to produce evidence supporting her claim for punitive damages.   Because Plaintiff has not made such a showing at this point, an order requiring disclosure of Quicken's financial records is premature.   The Court therefore **GRANTS** Quicken's objection regarding production of the financial records.   Quicken will not be compelled to produce the relevant financial records until Plaintiff has met her burden.[3]

Quicken also argues that regardless of the timing of an order to compel production of its financial records, those records may be irrelevant if Quicken chooses not to contest the punitive damages award.   The Court disagrees.   The Fourth Circuit has clearly held that "a defendant's financial position is a proper consideration in assessing punitive damages."   *Stamathis v. Flying J,*

---

[2] The Court is not persuaded by the cases relied upon by Plaintiff for the proposition that merely surviving a motion to dismiss satisfies the prima facie showing.   While often cited for this precise proposition, the Court finds that *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D.N.C. 1993) is not supportive.   There, the district court stated that if the defendant's motion to dismiss or motion for summary judgment as to the punitive damages claim were denied, the defendant would have to produce financial documents.   162 F.R.D. at 105.   Although ambiguous, it appears that the court contemplated the production of some evidence before disclosure of the financial documents.   *See id.* ("In order to determine the sufficiency of Plaintiff's pleadings *and evidence*, Defendants have until [the filing deadline to file dispositive motions] as to the punitive damages claim.   If either motion is successful, Defendants would not be required to produce their financial records.") (emphasis added).   In *Hester v. Cottrell Contracting Corp.*, No. 7:00-cv-70, 2001 WL 1764200 (E.D.N.C. Apr. 27, 2001), the court ordered disclosure of the defendant's financial condition after the plaintiff survived a motion to dismiss, but also because the plaintiff "[has] come forward *with evidence* to demonstrate punitive damages may be warranted."   *Id.* at *4 (emphasis added).   Accordingly, this Court concludes that Plaintiff must make a showing of some evidence; merely surviving a motion to dismiss without such evidence is insufficient.

[3] Plaintiff would certainly satisfy her burden by surviving a motion for summary judgment, although that would occur relatively late in litigation.   One alternative is for Plaintiff to file a renewed motion to compel discovery that includes sufficient supporting evidence (*i.e.,* affidavits, documentary evidence) to demonstrate a viable claim for punitive damages.

*Inc.*, 389 F.3d 429, 442 (4th Cir. 2004) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991)). Accordingly, the Court is not persuaded by the Southern District of New York case cited by Defendant. *See Tyco Int'l Ltd. v. Walsh*, No. 02-CV-4633, 2010 WL 3000179 (S.D.N.Y. 2010). Furthermore, the Court concludes that *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408 (2003), is not to the contrary, as Quicken argues. In *State Farm*, the Supreme Court held that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *State Farm*, 538 U.S. at 427. In reaching that conclusion, the Court did not hold that the financial worth of a defendant was irrelevant to determining the amount of punitive damages; rather, if the amount of punitive damages does not comport with the "guideposts" set out in *BMW of North America v. Gore*, 517 U.S. 559 (1996),[4] an excessive amount of punitive damages cannot stand, regardless of the defendant's ability to pay them. The Court's opinion in *State Farm* cited with approval Justice Breyer's concurrence in *Gore*, stating that although wealth "provides an open-ended basis for inflating awards when the defendant is wealthy . . . . That does not make its use unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors." *State Farm*, 538 U.S. at 427-28 (quoting *Gore*, 517 U.S. at 591 (Breyer, J., concurring)). Because Quicken's financial worth is relevant to a punitive damages award, the Court concludes that it is discoverable, whether or not Quicken chooses to contest any punitive damages amount.

**C.    Information Regarding Similar Borrowers**

Quicken argues that the magistrate judge clearly erred by ordering it to produce information for other West Virginia borrowers for whom it originated loans using the same

---

[4] These guideposts are: the degree of reprehensibility; disparity between the harm suffered and the potential punitive damages award; and the difference between this remedy and authorized civil penalties in comparable cases. *Gore*, 517 U.S. at 574-85.

valuation service, despite the "substantial burden and expense" associated with their production. In addition to claiming that production would be overly burdensome, Quicken claims that the information of similarly situated borrowers is not admissible, has no relevance to Plaintiff's claims, and is not likely to lead to admissible evidence.

The Court agrees with the magistrate judge's ruling and finds that it is not clearly erroneous or contrary to law.   The magistrate judge did not disregard Quicken's evidence regarding the costs associated with production.   The order acknowledged Quicken's assertion that the cost would exceed $13,000, but determined nonetheless that Plaintiff's request was not overly burdensome. The Court defers to this factual determination of the magistrate judge and finds no basis in the record to find that any mistake has been committed.   Similarly, the Court finds no error in the magistrate judge's conclusion that the requested information is relevant to Plaintiff's case. Plaintiff has asserted a fraud claim against Quicken, and the information about other borrowers is relevant as to whether Quicken engaged in a pattern and practice of fraud in West Virginia.   *See Marks v. Global Mortgage Grp., Inc.*, 218 F.R.D. 492, 497 (S.D. W. Va. 2003).   Therefore, the Court finds that the magistrate judge's findings are not clearly erroneous.

## D.    Reimbursement of Travel Expenses

Finally, Quicken challenges the magistrate judge's factual findings that reimbursement of travel costs may be appropriate.   In brief, Quicken argues that Plaintiff's notice of deposition failed to adequately describe the scope of evidence she sought for the topics "loan ownership and transfer."   Because it lacked sufficient notice of the Plaintiff's intended topics of deposition, Quicken argues, it was substantially justified in objecting to any deposition questions regarding these "new topics."   In response, Plaintiff argues that she indeed made a good faith effort to resolve this issue prior to requesting reimbursement, by responding to all of Quicken's requests for

clarifications of the deposition topics well in advance of the deposition date.   Plaintiff also argues that Quicken was not substantially justified in its failure to produce a competent witness, because it had sufficient notice of the topics of deposition in order to produce a prepared, competent witness.

Once again, the Court finds no mistake or clear error in the magistrate judge's decision. After reviewing the record, the magistrate judge made detailed factual findings, including that: (1) Plaintiff identified the relevant topics as early as October 8, 2012; and (2) Quicken conceded that it had some understanding about what areas of inquiry would be included under the topics of ownership and transfer of the loan, yet made no effort to identify a corporate representative who was knowledgeable about these topics.   The Court has reviewed the record and finds that the magistrate judge's findings are not clearly erroneous.   The Court additionally observes that at this stage, the magistrate judge has merely ordered Plaintiff's counsel to submit travel expenses "for further consideration of her motion for reimbursement," and has not yet entered an order requiring Quicken to pay any reimbursement.   Therefore, it is premature for this Court to enter an order regarding reimbursement of Plaintiff's expenses.   The Court will, however, deny Quicken's objection as to the relevant portion of the magistrate judge's February 11, 2013 Order.   As stated above, the Court finds that the magistrate judge's decision was not clearly erroneous, nor was it contrary to law.   Additionally, the Court emphasizes that the magistrate judge has wide discretion when resolving discovery disputes.   Because of this latitude and for the reasons discussed above, this Court is not likely to set aside an order from the magistrate judge requiring reimbursement of expenses, should such an order issue.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Quicken's objections to the magistrate judge's February 11, 2013 Order, as follows.   The Court

**GRANTS** Quicken's first objection.  Quicken need not produce documentation regarding its financial worth until Plaintiff has first demonstrated a prima facie claim for punitive damages. The Court **DENIES** Quicken's second objection.  Quicken must produce, <u>within 21 days of this order</u>, a full and complete response to Interrogatory No. 14 as it relates to West Virginia borrowers. Finally, the Court **DENIES** Quicken's third objection.  The Court finds that the magistrate judge's order permitting Plaintiff to submit expenses for possible reimbursement was not clearly erroneous or contrary to law.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 19, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

12