IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JANET R. ROBINSON,**

    **Plaintiff,**

v.                                            Case No.:  3:12-cv-00981

**QUICKEN LOANS, INC.,**
**WELLS FARGO BANK, N.A., and**
**JOHN DOE HOLDER,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Compel Production of Settlement Agreement and Related Documents Regarding the 2008 Litigation Between Defendants. (ECF No. 133). Defendants have filed memoranda in opposition of production, and Plaintiff has replied. (ECF Nos. 138, 139, 149). On May 8, 2013, the Court conducted a hearing on the matter. During the hearing, Defendants submitted the settlement agreement to the Court for *in camera* review. Having now considered the positions of the parties and the relevant submissions, the Court **DENIES** Plaintiff's Motion to Compel.

### I.    Relevant Facts

This civil action involves claims by Plaintiff that the Defendants, Quicken Loans, Inc. ("Quicken") and Wells Fargo Bank, N.A. ("Wells Fargo"), engaged in a joint venture to fraudulently induce her to procure an unconscionable, high-interest home equity loan. According to Plaintiff, in 2001, the Defendants entered into an agreement, called

the Home Equity Loan/Home Equity Purchase Line Agreement and Wells Fargo Home Equity Seller Guide (the "HELOC Agreement"), under which Quicken could originate home equity loans and lines of credit for sale to Wells Fargo. (ECF No. 133). In 2003, Plaintiff obtained a loan through Quicken, which she later learned was a "stated income loan" made pursuant to the HELOC Agreement.

In June 2008, Wells Fargo filed suit against Quicken for breach of the HELOC Agreement. Wells Fargo complained that Quicken had made inaccurate or untrue representations and warranties regarding some of the loans purchased by Wells Fargo. Wells Fargo contended that under the HELOC Agreement, Quicken was required to repurchase these loans; however, when Wells Fargo demanded that Quicken repurchase them, Quicken refused. Wells Fargo sought damages in the amount of $4,047,000.

In response to the complaint, Quicken filed an answer and counterclaim. In the counterclaim, Quicken alleged that when it originated loans under the HELOC Agreement, it followed guidelines provided by Wells Fargo. Quicken indicated that Wells Fargo created a "stated income loan" program, which allowed homeowners with a FICO score of at least 700 to borrow up to $100,000 without documentation of income. Quicken claimed that Wells Fargo fully expected that some of the borrowers would overstate their income and some would default. However, Wells Fargo was willing to assume the risk given the large profits it enjoyed from the program. According to Quicken, when home values began to drop in 2007, Wells Fargo experienced unexpected losses in its stated income loan portfolio; accordingly, it began to demand that Quicken repurchase loans.

Four months after initiation of the litigation, and before any discovery was conducted, Quicken and Wells Fargo reached a settlement agreement in the case. On

December 3, 2008, the case was dismissed.

Plaintiff subsequently learned about the 2008 litigation between the Defendants and recently obtained copies of the pleadings, the HELOC Agreement, and the order of dismissal, all of which were public record. She now asks the Court for an order compelling the Defendants to provide her with any documentation reflecting their negotiations in the case and with a copy of the confidential settlement agreement.

## II.     Relevant Law

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Although the Federal Rules of Civil Procedure do not define what is "relevant," Rule 26(b)(1) makes it clear that relevancy in discovery is broader than relevancy for purposes of admissibility at trial.[1] *Caton v. Green Tree Services, LLC,* Case No. 3:06-cv-75, 2007 WL 2220281 (N.D.W.Va. Aug. 2, 2007) (the "test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence"); *Carr v. Double T Diner,* 272 F.R.D.431, 433 (D.Md. 2010) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue

---

[1] Under the Federal Rules of Evidence, relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' *Boykin Anchor Co., Inc. v. Wong,* Case No. 5:10-cv-591-FL, 2011 WL 5599283 at * 2 (E.D.N.C. Nov. 17, 2011), *citing United Oil Co., v. Parts Assocs., Inc,* 227 F.R.D. 404. 409 (D.Md. 2005).

that is or may be in the case"). Nevertheless, discovery is not without limits. While a party is entitled to discovery that is focused on the claims and defenses raised in the pleadings, discovery into matters relevant to the broader subject matter of the litigation is restricted to occasions when a party demonstrates "good cause" for the discovery. *Johns Hopkins University v. Datascope Corp.,* Case No. WDQ-05-759, 2007 WL 1450367 (D.Md. May 16, 2007).

In the case of confidential settlement agreements, some courts have recognized a "settlement privilege" that protects the agreements from disclosure. Others courts have required a "particularized showing that admissible evidence will be generated" before allowing discovery of a confidential settlement agreement. *See USAA Cas. Ins. Co. V. Smith,* Case No. 1:10-cv-115, 2012 WL 967368 (N.D.W.Va. Mar. 21, 2012). In contrast, courts in the Fourth Circuit have generally declined to recognize a federal settlement privilege. *National Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.,* Case No. CCB-03-3408, 2012 WL 628493 (D.Md. Feb. 24, 2012) (citing *Equal Rights Ctr. V. Archstone-Smith Trust,* 251 F.R.D. 168, 170 (D.Md. 2008). Moreover, when determining whether a settlement agreement is producible in discovery, courts in this circuit have found that "*relevance* not *admissibility,* is the appropriate inquiry." *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.,* 171 F.R.D. 179, 181 (D.Md. 1997) (emphasis in original). Thus, a particularized showing related to potential admissibility of evidence is not necessary to justify production of a confidential settlement agreement.

### III. Analysis

Plaintiff argues that the settlement agreement and related documents are relevant in five ways. First, she argues that the documents may help establish her claim

that the Defendants were engaged in a joint venture. Defendants argue in response that Plaintiff has the HELOC Agreement and the pleadings from the litigation, and those documents provide the best information about the relationship between the parties. Having reviewed the settlement agreement, the Court agrees with Defendants that it provides no information even remotely relevant to the issue of joint venture.

Second, Plaintiff contends that the settlement agreement may apportion liability in a way that will shed light on who was "driving the train" in the Defendants' business dealings with Plaintiff. According to Quicken, however, it was the only party that communicated directly with Plaintiff during the origination of the loan. Therefore, the bulk of Plaintiff's claims implicate only Quicken. Defendants are not relying upon the settlement agreement as proof of their respective responsibility in the instant action, and the Court fails to see how apportionment of liability, even if it was expressed in the agreement, is relevant to Plaintiff's claims. In the event that a jury concludes that the Defendants participated in a joint venture to defraud Plaintiff, or that Quicken was Wells Fargo's agent in a predatory lending scheme, Defendants will be jointly and severally liable to Plaintiff regardless of Defendants' perceptions of their individual responsibility. *Short v. Wells Fargo Bank Minnesota, N.A.,* 401 F.Supp.2d 549, 563 (S.D.W.Va. 2005). In any event, the undersigned's *in camera* review revealed the document to be a standard settlement agreement and general release. Consequently, the document is neither relevant to Plaintiff's claims nor to the Defendants' defenses.

For her third, fourth, and fifth grounds, Plaintiff suggests that the settlement agreement and related documents may be relevant to the "willfulness" and unconscionability of Defendants' actions and for impeachment purposes. While this is a reasonable idea, the reality does not sustain it. In its written response and oral

argument, Quicken emphasizes that Plaintiff's loan was not one of the 90 or so loans that triggered the litigation and was not specifically addressed during the proceedings. No discovery was conducted and no finding of wrongdoing or breach of contract was made by a court or a jury. Given that Plaintiff did not file her lawsuit until 2012 and admittedly did not know of any problem with the valuation of her property until June 2011, it makes perfectly good sense that her loan was not one that figured prominently in the 2008 litigation. More importantly, having reviewed the settlement agreement, the undersigned finds nothing in it that is relevant to the issues of unconscionability or willfulness and nothing that would create a basis for impeachment. Plaintiff has already obtained the HELOC Agreement, pleadings, and testimony pertaining to the litigation between the Defendants. In addition, Plaintiff has obtained testimony from the Defendants specific to her loan and whether its origination complied with the terms of the HELOC Agreement. The undersigned sees nothing in the agreement that contradicts, explains, supplements, or addresses the evidence of record.

In view of the Court's finding that the documents sought by Plaintiff do not pertain to her loan or otherwise provide information relevant to the claims and defenses in this case, Plaintiff's motion to compel the settlement documents is denied.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:** May 10, 2013.

_____
Cheryl A. Eifert
United States Magistrate Judge