IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JANET R. ROBINSON,

                Plaintiff,

v.                                 CIVIL ACTION NO.  3:12-0981

QUICKEN LOANS INC.;
WELLS FARGO BANK, N.A.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Quicken Loans' Motion for Summary Judgment (ECF. No. 204), Defendant Wells Fargo Bank's Motion for Partial Summary Judgment (ECF No. 202), and Plaintiff's Motion for Leave to File Surreply (ECF No. 219). In her Surreply, Plaintiff also moves to "conform the pleadings to the evidence to clarify that Plaintiff raises two fraud claims, one in equity and one in law," under Federal Rule of Civil Procedure 15. Pl.'s Surreply 4, ECF No. 219-1.

Plaintiff's Motion for Leave to File Surreply is **GRANTED**. However, Plaintiff's request in her Surreply to "conform the pleadings to the evidence" is **DENIED**. Defendant Quicken Loans' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Defendant Wells Fargo Bank's Motion for Partial Summary Judgment is **DENIED**.

Plaintiff's fraud claim that, during the loan-origination process, an agent of Quicken Loans misrepresented that the loan's interest rate would not rise and that Plaintiff relied upon that claim to her detriment is **DISMISSED** as time-barred.

1

## I.        Background

On March 2, 2012, Plaintiff Janet Robinson brought this action in the Circuit Court of Cabell County, West Virginia, against Defendants Quicken Loans, Inc., ("Quicken Loans"), Wells Fargo Bank, N.A., ("Wells Fargo") and John Doe Holder. Compl., ECF No. 1-1. Quicken Loans, with the consent of Wells Fargo, removed the case to this Court on April 5, 2012. Notice Removal, ECF No. 1.

On April 18, 2013, Plaintiff filed an Amended Complaint, which removes Defendant John Doe Holder and alleges four counts of illegal loan practices relating to a November 2003 mortgage refinancing loan obtained from lender Quicken Loans and serviced by Wells Fargo. Am. Compl., ECF No. 146. In Count I, Plaintiff alleges that the agreement with Defendants for the adjustable home equity line of credit ("HELOC") was an unconscionable contract because it was induced by misrepresentations and suppressions and because it was an adjustable rate mortgage, increased Plaintiff's monthly loan payments, included an annual fee, and exceeded the value of her home. *Id.* ¶¶ 25-27. Under this count, Plaintiff seeks declaratory and injunctive relief, actual damages, a civil penalty, reasonable attorney's fees and costs, and "such other relief as may be equitable and just." *Id.* ¶ 27. In Count II, Plaintiff alleges that the loan was illegal under West Virginia law because Quicken Loans intentionally provided a mortgage loan to Plaintiff which exceeded the fair market value of her property, in violation of West Virginia Code § 31-17-8(m)(8). *Id.* ¶ 29. Under this count, Plaintiff seeks declaratory relief, the return of payments made on the loan, a penalty of $4,400, reasonable attorney's fees and costs, and "such other relief as may be equitable and just." *Id.* In Count III, Plaintiff alleges that Quicken Loans engaged in fraud during the lending process by misrepresenting to Plaintiff that her interest rate would not rise and that her home had a value of

$84,350 when its true value was only $33,500, and by suppressing from Plaintiff the true terms of the loan and the risks associated with the true terms. *Id*. ¶¶ 31-37. Under this count, Plaintiff seeks actual damages, punitive damages, reasonable attorney's fees and costs, and "such other relief as may be equitable and just." *Id.* ¶ 37. In Count IV, Plaintiff alleges both a joint venture and an agency relationship between Quicken Loans and Wells Fargo, with Quicken Loans acting as Wells Fargo's agent in the case of the agency relationship. *Id.* ¶¶ 39-46. Under this count, Plaintiff seeks joint and several liability between the two defendants regarding all other counts. *Id.* ¶ 46.

Quicken Loans filed the instant Motion for Summary Judgment, and Wells Fargo filed the instant Motion for Partial Summary Judgment. Plaintiff filed a Combined Response to both motions, ECF No. 210, and Quicken Loans filed a Response to Wells Fargo's motion, ECF No. 207. Both Defendants filed Replies to Plaintiff's Response in support of each's own motion. Wells Fargo's Reply, ECF No. 216; Quicken Loans' Reply, ECF No. 218. Plaintiff filed a Motion for Leave to File Surreply to Quicken Loans' Reply. ECF No. 219. In her attached Surreply, Plaintiff "moves to conform the pleadings to the evidence to clarify that [she] raises two fraud claims, one in equity and one in law, and that her equitable fraud claim relates to Quicken [Loan]'s misrepresentation that her rates would likely not rise, its misrepresentation that it would refinance her loan if they did rise, and its suppression of the impact and reality of the loan terms, including the adjustable rate and the interest only feature of the loan." Pl.'s Surreply 4, ECF No. 219-1. Quicken Loans filed its Opposition to Plaintiff's Motion for Leave to File Surreply, ECF No. 221. Quicken Loans then filed a Notice of Supplemental Authority in Support of Its Motion, ECF No. 233, and Plaintiff filed her Response to this Notice, ECF No. 234. Quicken Loans also filed a second Notice of Supplemental Authority in Support of Its Motion, ECF No. 236, and Plaintiff

filed her Response to this second Notice, ECF No. 237. All motions are ripe for resolution.

## II.     Standard for Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Id.* at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate, however, when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252. Summary judgment is also appropriate when the inquiry involves a pure question of law. *Taft v. Vines*, 70 F.3d 304, 316 (4th Cir. 1995), *vacated en banc on different grounds*, 83 F.3d 681 (4th Cir. 1996).

### III.     Undisputed Facts

The parties contest the majority of the facts in this case, so the Court has conservatively determined the following undisputed facts for the purpose of the resolution of these summary judgment motions.

Plaintiff is a high school graduate who purchased her home for $15,000 in 1995. The sellers provided $5,000 for improvements to the home, and improvements were made with this money. Plaintiff entered into multiple home loans, and during 2001, her monthly loan payment was $582. In the fall of 2003, Plaintiff and Quicken Loans discussed refinancing the loan(s) on Plaintiff's home. Plaintiff's goal was to lower her payments. Quicken Loans provided Plaintiff with loan disclosures. Plaintiff's car loan was added to the Quicken Loans refinance loan. To obtain a valuation of Plaintiff's home, Quicken Loans used an automated valuation service. The final loan was a home equity line of credit ("HELOC") loan for around $81,000, with a variable interest rate capped at 18%. The first ten years of payments were interest only. As part of the loan, Plaintiff was also to be charged an annual $75 fee.

The loan was transferred from Quicken Loans to Wells Fargo. Beginning July 2004, Plaintiff's interest rate increased and, consequently, her loan payments increased. In the fall of 2005, Plaintiff contacted Quicken Loans to try to refinance her loan. At that time, Quicken Loans conducted an appraisal of Plaintiff's home that valued the property at approximately $53,000. Quicken Loans refused to refinance the loan because Plaintiff's home value was lower than the amount she owed on her loan.[1] In the summer of 2006, Plaintiff's interest rate reached 10.2% and her monthly payment reached $704 per month.

---

[1] It is unclear whether Plaintiff knew or understood, at the time, that this was the reason why Quicken Loans would not refinance her loan.

IV.    **Quicken Loans' Motion for Summary Judgment**

In support of entering summary judgment against Plaintiff, Quicken Loans argues that:

1. Plaintiff's unconscionable contract claim (Count I) fails as a matter of law because the agreement at issue was neither the result of an unconscionable procedure nor is it substantively unconscionable (Quicken Loans' Mem. Supp. Mot. Summ. Judg. 16-19, ECF No. 205)

2. Plaintiff's illegal loan claim (Count II) is time-barred under the two-year statute of limitations in West Virginia Code § 55-2-12, even when applying the discovery rule (*Id.* at 12-13);

3. Plaintiff's "fraud claim" (Count III) is time-barred under the two-year statute of limitations in West Virginia Code § 55-2-12, even when applying the discovery rule (*Id.* at 10-12);

4. Laches does not apply to Plaintiff's "fraud claim" (Count III), or even if it does, the claim is also time-barred under laches (Quicken Loans' Reply 6-8);

5. Alternatively, Plaintiff fails, as a matter of law, to satisfy her burden of proving her "fraud claim" (Count III) by clear and convincing evidence because Plaintiff fails to provide evidence of justifiable reliance (Quicken Loans' Mem. Supp. Mot. Summ. Judg. 13-16); and

6. Plaintiff's joint venture claim (Count IV) is derivative of the other claims in the Complaint; thus, it must also fail if all of the other claims fail (*Id.* at 19-20).

Wells Fargo adopts the arguments made in Quicken Loans' Motion for Summary Judgment. Wells Fargo's Mem. Supp. Mot. Part. Summ. Judg. 4 n.2, ECF No. 203. Quicken Loans' Motion will be addressed first as to both Defendants, and then the Court will address Wells Fargo's Partial Summary Judgment Motion as to Wells Fargo alone.

**A. Unconscionable Contract Claim (Count I)**

Defendants argue that Plaintiff's unconscionable contract claim (Count I) fails as a matter of law because the agreement at issue was neither the result of an unconscionable procedure nor is it substantively unconscionable.

6

Under West Virginia law, an unconscionable contract claim must demonstrate two types of unconscionability: procedural and substantive. *State ex rel. Johnson Controls, Inc., v. Tucker*, 229 W. Va. 486, 494-95 (2012). "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Id.* at 495 (internal quotation marked omitted). "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." *Id.* (internal quotation marked omitted). The showing required for each of the two types of unconscionability is not set in stone:

> A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.
> .

*Id.* (internal quotation marks omitted).

As clarified by the Supreme Court of Appeals of West Virginia:

> Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction.  These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

*Tucker*, 229 W. Va. at 495 (internal quotation marks omitted).

Although no single, precise definition of substantive unconscionability exists, the general inquiry is whether "the terms of a contract are unreasonably favorable to the more powerful party." *Id.*; *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 684 (2011), *vacated on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012). In determining

whether a contract is substantively unconscionable, courts consider factors such as "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Tucker*, 229 W. Va. at 495 (internal quotation marks omitted).

"[A]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." *Pingley v. Perfection Plus Turbo-Dry, LLC*, 231 W. Va. 553, Syl. Pt. 6 (2013) (internal quotation marks omitted). "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 386 (2012) (internal quotation marks omitted).

Plaintiff argues that numerous material issues of fact are in genuine dispute, including whether Plaintiff was confused by the loan documents and could not understand them, whether Quicken Loans reassured Plaintiff during the origination of the loan that her payments would not increase or that it would refinance the loan if the payments did change,[2] whether Quicken Loans pressured Plaintiff into a HELOC loan when Plaintiff expressly requested a traditional loan, whether Quicken Loans pressured Plaintiff into a larger loan than that which she requested,

---

[2] Quicken Loans argues that Plaintiff cannot now assert that Quicken Loans' loan origination officer misrepresented that Quicken Loans would refinance Plaintiff's loan if her payments increased because this assertion is nowhere in Plaintiff's Complaint. Quicken Loans' Reply 14. As a mere assertion of fact among the many assertions of fact to be considered in the context of the unconscionability claim, the Court sees no reason why this assertion is improper. In the unconscionable contract portion of her Complaint, Plaintiff states that the "loan agreement was induced by misrepresentations and suppressions *including*" those listed in the Complaint. Am. Compl. ¶ 25. Defendants do not get to exclude facts from consideration merely because they are not included in the Complaint, which, by definition, is to be a short, plain statement of the claim(s) for relief, with each claim supported by merely enough facts to be plausible. Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Plaintiff need not include all possible relevant facts in her Complaint, and she has not changed the nature of her unconscionable course of conduct/unconscionable contract claim by accumulating additional facts in its support. However, as explained below, this assertion cannot be considered as part of Plaintiff's fraud claims without amending the Complaint.

whether Quicken Loans trains its employees to suppress information and pressure clients into loans, whether the loan origination officer who worked on Plaintiff's loan was under significant pressure to increase her loan sales at the time Plaintiff's loan was originated, whether Quicken Loans provided inaccurate disclosures to Plaintiff during the origination process, whether Quicken Loans placed Plaintiff into a higher interest rate loan than that for which she qualified, whether Quicken Loans charged Plaintiff additional fees for which she obtained no benefit, and whether Quicken Loans used the highest value from an unreliable automated valuation model—contrary to guidelines established by Wells Fargo in connection with the two companies' relationship, whereby Quicken Loans originated loans and sold them to Wells Fargo for servicing—to increase the loan amount, making Plaintiff's risky variable interest rate loan nearly impossible to refinance in the future. Pl.'s Combined Resp. 2-16, 28-35. Any one of these assertions, if true, would affect the fact-intensive inquiry into whether Plaintiff's HELOC agreement in this case is an unconscionable contract which should be unenforceable as a matter of law, and Plaintiff supplies adequate evidence in support of these assertions to create genuine issues of material fact. If all of these disputed assertions are believed, this Court cannot say, as a matter of law, that no reasonable fact finder could return a verdict for Plaintiff. Thus, Defendants' request for summary judgment on the basis that Plaintiff's evidence in support of Count I is inadequate as a matter of law is **DENIED**.

### B.  Illegal Loan Claim (Count II)

Defendants argue that Plaintiff's illegal loan claim (Count II) is time-barred under the two-year statute of limitations in West Virginia Code § 55-2-12, even when applying the discovery rule.

In *Dunn v. Rockwell*, the Supreme Court of Appeals of West Virginia laid out a five-step analysis for determining whether a cause of action is time-barred. 225 W. Va. 43, 53 (2009). First, the Court must identify the applicable statute of limitations for the cause of action. *Id.* Second, "the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred." *Id.* "Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action . . . ." *Id.* Fourth, if the discovery rule does not apply, then the Court must "determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action."[3] *Id.* If so, then the statute of limitations is tolled. *Id.* Fifth, "the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine."[4] *Id.* Only the first step is a pure question of law. *Id.*

Plaintiff's illegal loan claim is brought under West Virginia Code § 31-17-8(m)(8), which states in pertinent part:

> In making any primary or subordinate mortgage loan, no licensee may, and no primary or subordinate mortgage lending transaction may, contain terms which[] [s]ecure a primary or subordinate mortgage loan in a principal amount that, when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans secured by the same property, exceeds the fair market value of the property on the date that the latest mortgage loan is made.

Defendant argues that, because there is no statute specifically designating the operative statute of limitations period for a claim under § 31-17-8(m)(8), the two-year, catch-all statute of limitations period contained in West Virginia Code § 55-2-12 governs. Section 55-2-12 states:

---

[3] Plaintiff does not argue that either Defendant fraudulently concealed facts with the effect that plaintiff was prevented from discovering or pursuing this claim, so the Court will not engage in this step of the analysis.

[4] Plaintiff does not argue that statute of limitations period was arrested by some other tolling doctrine, so the Court will not engage in this step of the analysis.

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Plaintiff argues that the appropriate statute of limitations for a claim under § 31-17-8(m)(8) is either the statute of limitations for consumer claims under West Virginia Code § 46A-5-101(1) or the statute of limitations for contract claims under West Virginia Code § 55-2-6. Section 46A-5-101(1) [consumer claims] states in pertinent part:

With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.

Section 55-2-6 [contract claims] states:

Every action to recover money, which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: If the case . . . be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years; and if it be upon any other contract, express or implied, within five years . . . .

The Court will address each of the possible statutes of limitation in turn.

The statute of limitations for consumer claims under § 46A-5-101(1) does not apply to Plaintiff's illegal loan claim under § 31-17-8(m)(8) by the very terms of § 46A-5-101(1). When defining the instances in which each of the two statutes of limitation apply, § 46A-5-101(1) states that "no action *pursuant to this subsection* may be brought" within the applicable time period. W. Va. Code § 46A-5-101(1) (emphasis added). Plaintiff brings this illegal loan claim under §

31-17-8(m)(8), which is part of the West Virginia Residential Mortgage Lender, Broker and Servicer Act ("Mortgage Lender Act"), W. Va. Code §§ 31-17 *et seq.* Plaintiff did not properly bring this claim under any portion of §§ 46A *et seq.*, which encompasses the West Virginia Consumer Credit and Protection Act ("WVCCPA").[5] Plaintiff claims that the limitations period under § 46A-5-101(1) is nevertheless applicable to § 31-17-8(m)(8) because another portion of the Mortgage Lender Act, § 31-17-18(b), specifically references the WVCCPA. Section 31-17-18(b) states, "The penalties and remedies embodied in this article are not exclusive, but are cumulative with other applicable provisions of this code, including, but not limited to, the consumer protection laws in chapter forty-six-a of this code." However, as understood by the Court, this section of the Mortgage Lender Act merely allows complainants to bring actions under both Acts for the same conduct. *Litten v. Quicken Loans, Inc.*, No. 1:13-cv-192, at *33 (N.D. W. Va. Nov. 12, 2013). The West Virginia Legislature could easily have much more clearly linked the two Acts if it meant to make the penalty and statute of limitations sections interchangeable between them. Thus, the statute of limitations for consumer claims under § 46A-5-101(1) does not apply to Plaintiff's illegal loan claim.

The statute of limitations for contract claims under § 55-2-6 does not apply to Plaintiff's illegal loan claim under § 31-17-8(m)(8) because the illegal loan claim sounds in tort—not contract—law. *Litten*, No. 1:13-cv-192, at *16-20. Plaintiff's Complaint states that "Defendant Quicken *intentionally* provided a mortgage loan to Plaintiff exceeding the fair market value of the property, in violation of West Virginia Code section 31-17-8(m)(8)." Am. Compl. ¶ 29 (emphasis

---

[5] In Count II of the Complaint, Plaintiff seeks the "[a]ctual penalty of $4,400 pursuant to West Virginia Code sections 46A-5-101(1) and 106." Am. Compl. ¶ 29(b). However, just as Plaintiff cannot import a statute of limitations period from the WVCCPA into the Mortgage Lender Act, she cannot import the penalties from the WVCCPA into the Mortgage Lender Act.

12

added). Plaintiff alleges no breach of a contract term; rather, she alleges a breach of an extra-contractual duty imposed upon the relationship between the parties by the West Virginia legislature; this indicates that the claim sounds in tort. *See Pancake House, Inc. v. Redmond By & Through Redmond*, 239 Kan. 83, 86 (1986) ("Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the essential claim of the action is a breach of a duty imposed by law upon the relationship . . . and not of the contract itself, the action is in tort.") (cited with approval by *Hall v. Nichols*, 184 W. Va. 466, 469 (1990)). Additionally, the use of the word "intentionally" in the Complaint strongly supports an action sounding in tort. *See Litten*, No. 1:13-cv-192, at *19 (citing *Globe Ref. Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 547 (1903) ("The motive for the breach commonly is immaterial in an action on the contract.")). Finally, although § 31-17-8(m)(8) provides the legal theory behind Count II, Plaintiff requests in the Complaint that this Court declare the loan agreement here unenforceable using § 31-17-17, which states, "If any primary or subordinate mortgage loan is made in *willful* violation of the provisions of this article, except as a result of a bona fide error, such loan may be cancelled by a court of competent jurisdiction." W. Va. Code § 31-17-17(a) (emphasis added). By using the word "willful," the legislature indicates that—at least in regard to this particular remedy—it contemplated violations of the Mortgage Lender Act, W. Va. Code §§ 31-17 *et seq.*, to sound in tort law, not contract law. *Litten*, No. 1:13-cv-192, at *19. Thus, the statute of limitations for contract claims under § 55-2-6 does not apply to Plaintiff's illegal loan claim.

Given that neither § 55-2-6 nor § 46A-5-101(1) provides the statute of limitations period for § 31-17-8(m)(8), the two-year, catch-all statute of limitations period contained in § 55-2-12

13

governs. Next, the Court must identify when the requisite elements of the cause of action occurred.

Section 31-17-8(m)(8) states that "no primary or subordinate mortgage lending transaction may[]

contain terms which[] [s]ecure a primary or subordinate mortgage loan in a principal amount that .

. . exceeds the fair market value of the property." Here, when the loan agreement was

consummated at closing, it contained terms which allegedly violated § 31-17-8(m)(8). Thus,

Plaintiff's illegal loan claim accrued at closing in late 2003. *See Litten*, No. 1:13-cv-192, at *22.

Next, the discovery rule is applied to determine when the statute of limitations began to run. Under

the discovery rule, which is generally applicable to all torts,

> the statute of limitations begins to run when the plaintiff knows, or by the exercise
> of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the
> identity of the entity who owed the plaintiff a duty . . . , and who may have engaged
> in conduct that breached that duty, and (3) that the conduct of that entity has a
> causal relation to the injury.

*Dunn*, 225 W. Va. at 52-53 (internal quotation marks omitted). Further,

> whether a plaintiff "knows of" or "discovered" a cause of action is an objective test.
> The plaintiff is charged with knowledge of the factual, rather than the legal, basis
> for the action. This objective test focuses upon whether a reasonable prudent person
> would have known, or by the exercise of reasonable diligence should have known,
> of the elements of a possible cause of action.

*Id.* at 53. "Where a plaintiff knows of his injury, and the facts surrounding that injury place him on

notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and

fully investigate the facts surrounding that potential breach." *McCoy v. Miller*, 213 W. Va. 161,

165 (2003).

Defendant argues that when Plaintiff was unable to convince Quicken Loans to refinance

her home in the fall of 2005, she knew or should have known the basis of her illegal loan

claim—that Quicken Loans may have lent her more money than her home was worth—or that she

was at least on notice of her claim and, thus, had an affirmative duty to further investigate. Plaintiff

14

argues that 1) in 2005, Quicken Loans did not tell her at what value her home had been appraised during the refinance investigation by Quicken Loans and 2) she did not know nor should she have known of her injury—that her home was overvalued by Quicken Loans in 2003 to give her a loan larger than its true worth—until she received a retroactive appraisal in 2011, stating that her home had been worth only $34,000 in 2003.

The reasonableness of Plaintiff's lack of inspection as to whether she had suffered an injury is most appropriately a question of fact to be resolved by the fact-finder. *See, e.g.*, *Famous Knitwear Corp. v. Drug Fair, Inc.*, 493 F.2d 251, 253 (4th Cir. 1974) ("[T]he question of the reasonableness of a third party's reliance on a principal's manifestations of the apparent authority of his agent are essentially questions of fact."); *Heartland, L.L.C. v. McIntosh Racing Stable, L.L.C.*, 219 W. Va. 140, 150 (2006) (where a "condition must be performed or abandoned within a reasonable time . . . the reasonableness of any delay should be resolved by a jury" (citation omitted)). In summary judgment, the Court must not weigh the evidence, and it must draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. Here, a reasonable fact finder could agree with Plaintiff that the discovery rule tolls the statute of limitations in this case until Plaintiff received the results of her retroactive appraisal in 2011. It is possible that Plaintiff, acting reasonably, did not realize in 2005 that she had suffered the requisite injury for her illegal loan claim upon hearing that Quicken Loans would not refinance her home—two years after the initial loan was made and without being provided with the substantially lower appraisal value from 2005—, perhaps thinking that the value of her home had simply decreased slightly over time. Contrary to Quicken Loans' argument, Plaintiff's vague belief in 2005 that Quicken Loans had "done something wrong" does not mean that she should have

15

realized that she had suffered the specific injury which results in this claim. Quicken Loans' Reply 11. Plaintiff's other allegations alone—that she believed, based upon Quicken Loans' reassurances, that her payment would not increase over time and that Quicken Loans had promised to refinance her loan—could have led to the feeling in 2005 that Quicken Loans was in the wrong in denying her refinancing after Plaintiff's payments increased. Thus, Defendants are not entitled to judgment as a matter of law regarding Count II.

### C.  Fraud Claims (Count III)

Defendants argue: 1) Plaintiff's "fraud claim" (Count III) is time-barred under the two-year statute of limitations in West Virginia Code § 55-2-12, even when applying the discovery rule; 2) laches does not apply to Plaintiff's "fraud claim," or even if it does, the claim is also time-barred under laches; and alternatively, 3) Plaintiff fails, as a matter of law, to satisfy her burden of proving her "fraud claim" by clear and convincing evidence because Plaintiff fails to provide evidence of justifiable reliance. After clarifying what claims Plaintiff asserts in Count III, the Court will address each argument in turn.

In Count III of the Complaint, Plaintiff alleges two separate fraud claims;[6] each is based upon a separate alleged misrepresentation of a key fact by Quicken Loans during the loan-origination process: 1) that the loan's interest rate would not rise and 2) that Plaintiff's home

---

[6] To clarify, a "claim for relief" is different from a legal theory for why relief should be granted. Fraud is a legal theory; a misrepresentation *that a loan's interest rate will not rise*, together with justifiable reliance by the complainant and injury to the complainant as a result, is a claim. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("Identifying legal theories [in the Complaint] may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules. Putting each legal theory in a separate count is a throwback to code pleading . . . [in which] legal theory and facts together created a 'cause of action.' The Rules of Civil Procedure divorced factual from legal aspects of the claim and replaced 'cause of action' with 'claim for relief' to signify the difference. . . . One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate."). To the extent that the Memorandum Opinion and Order entered on August 24, 2012, ECF No. 36, states that Plaintiff asserts one fraud claim, instead of two, this Memorandum Opinion and Order amends that prior Order.

16

had a value of $84,350 when, in reality, its value was only $33,500. Am. Compl. ¶¶ 31, 32. Plaintiff also alleges that Quicken Loans "suppressed from Plaintiff the true terms of the loan and the risks associated with the actual loan terms." *Id*. ¶ 34. In its prior Memorandum Opinion and Order denying Quicken Loans' Motion to Dismiss, this Court did not treat the "suppression of terms" allegation as asserting a separate claim.[7] Mem. Opinion & Order Denying Mot. Dismiss 9-12, ECF No. 36.

Now, Plaintiff alleges that she raises "two fraud claims, one in equity and one in law." Pl.'s Surreply 2, 4. According to Plaintiff, her claim in law is that Quicken Loans misrepresented to Plaintiff that her home had a value of $84,350 when, in reality, its value was only $33,500. Pl.'s Combined Resp. 17-18. She further states that her claim in equity "relates to Quicken [Loan]'s misrepresentation that her rates would likely not rise, its misrepresentation that it would refinance her loan if they did rise, and its suppression of the impact and reality of the loan terms, including the adjustable rate and the interest only feature of the loan."[8] Pl.'s Surreply 4. Importantly, the alleged misrepresentation regarding whether Quicken Loans would refinance Plaintiff's loans if her payments increased and the alleged suppression by Quicken Loans of the interest-only feature of the loan do not appear in the Complaint.

---

[7] Despite stating that Plaintiff asserted one fraud claim, this Court in its prior Order nevertheless analyzed each of the two specific alleged misrepresentations in a separate section with its own heading, which is consistent with the idea that each alleged misrepresentation asserts a separate claim. Mem. Opinion & Order Denying Mot. Dismiss 9-12. The "suppression of terms" allegation is mentioned once and then ignored. *Id.*

[8] In her Response, Plaintiff appears to group the "claim in equity" under the "suppression of terms" wording from her Complaint, stating that "Quicken suppressed the true impact of the loan and the loan terms from Ms. Robinson during the loan origination process, including the adjustable rate and the interest-only feature" and that "Quicken effectively masked the terms by misrepresenting to Ms. Robinson that it would refinance her loan if she had any problems later." Pl.'s Combined Resp. 18-19. However, Plaintiff's newest filing is the Surreply, quoted above, which groups her second amorphous "claim in equity" into two alleged misrepresentations and one two-part alleged suppression of terms, with no high-level joinder of these disparate elements into a single claim which is separate from the appraisal misrepresentation claim in any logical way, other than that one claim is supposedly in law and one is supposedly in equity. Plaintiff states that her "claims and allegations were entirely clear to all parties throughout this litigation." Pl.'s Surreply 4. On the contrary, both have changed over time within the Plaintiff's own briefing for the instant Motions.

17

Plaintiff cannot now constructively amend her Complaint through representations in her reply briefs to Defendants' Motions for Summary Judgment. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); *Samosky v. United Parcel Serv.*, No. CIV.A. 1:10-01081, 2013 WL 1895673 (S.D. W. Va. May 6, 2013) (The "complaint cannot be construed so liberally so as to deprive [the defendant] of notice."). Unlike Plaintiff's unconscionable course of conduct claim—which must simply state the standard short, plain statement of the claim supported by only enough factual assertions to make the claim plausible, as required by Federal Rule of Civil Procedure 8—, each fraud claim asserted in federal court must meet a higher pleading standard in order to give defendants adequate notice of the claim, as required by Rule 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "General allegations are insufficient and enough facts must be set out to apprise the adversary as to what *acts* are relied upon as constituting fraud . . . ." *New York, N. H. & H. R. Co. v. New England Forwarding Co.*, 119 F. Supp. 380, 382 (D.R.I. 1953) (emphasis added). "A complaint utterly fails Rule 9(b)'s requirement . . . when it makes only the most general of allegations that defendants misrepresented material facts and fails to allege any specific fraudulent statements . . . ." *DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 658 (S.D.N.Y. 2011) (internal quotation marks omitted) (brackets and ellipses omitted); *see also Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 896 (D. Haw. 2011) ("Plaintiffs' general averments of alleged fraud fail to identify 'the who, what, when, where, and how' of the purported misconduct. The. . . Complaint . . . fail[s] to assert 'particularized allegations of the circumstances constituting fraud' such as the time, place, and nature of the alleged fraud, and how each

18

Defendant participated in the fraud." (citation omitted) (internal quotation marks omitted)).

In line with the requirements of Rule 9(b), each of the two fraud claims identified in the Complaint by the Court is based upon a specific alleged misrepresentation of a key fact by Quicken Loans during the loan-origination process: 1) that the loan's interest rate would not rise and 2) that Plaintiff's home had a value of $84,350 when, in reality, its value was only $33,500. In order to ground Plaintiff's new conglomerate fraud "claim in equity" in the Complaint, the Court must either somehow cram it all into the specific misrepresentation in the Complaint that the loan's interest rate would not rise or allow an end-run around Rule 9(b) by reading the new allegations (the misrepresentation about refinancing and the suppression of the interest-only feature of the loan) into the generalized allegation that Quicken Loans "suppressed from Plaintiff the true terms of the loan and the risks associated with the actual loan terms." The first makes no sense, and the second ignores Rule 9(b). The Court will not rewrite the Complaint as a result of Plaintiff's briefing on summary judgment motions.

The Court will also not ignore the fact that, in the Complaint, the relief requested for each of Plaintiff's fraud claims is grouped under Count III without differentiating which relief (legal or equitable) applies to which claim. In the absence of any indication that the relief requested for the fraud claims attaches to only one or the other of the fraud claims, both types of relief apply to both claims. Again, the Court will not rewrite the Complaint as a result of Plaintiff's briefings on summary judgment motions.

Plaintiff asserts that her theory of the two fraud claims, one in equity and one in law, as outlined in her Surreply are already supported by the Complaint, but in the alternative, she "moves to conform the pleadings to the evidence." Pl.'s Surreply 4. Plaintiff's Surreply was the improper

venue to move to amend the pleadings. Regardless, Plaintiff has failed to meet the standard required of her to successfully amend her Complaint at this late point in time.[9] Thus, her motion to "conform the pleadings to the evidence" is **DENIED**.

### 1. Statute of Limitations / Discovery Rule / Laches

The West Virginia Supreme Court of Appeals dictates that "if a particular cause of action sounds in both equity and law, then a trial court should apply a statute of limitation to that particular cause of action." *Dunn*, 225 W. Va. at 55 (emphasis removed); *see also Mountain State Coll. v. Holsinger*, 230 W. Va. 678, 686-87 (2013) ("Because the circuit court granted judgment as a matter of law on the respondents' fraudulent inducement claim on the basis that the claim was time-barred, the respondents did not have an equitable claim for fraudulent inducement."). Thus, the appropriate statute of limitations—and not the equitable defense of laches—will apply to each fraud claim.

---

[9] This Court entered a Scheduling Order on June 1, 2012, pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, which set the September 11, 2012, deadline for filing amended pleadings. Plaintiff successfully moved the Court to amend her Complaint on April 18, 2013. Am. Compl, ECF No. 146. Plaintiff now moves to "conform the pleadings to the evidence" without specifying under which subsection of Federal Rule of Civil Procedure 15 she makes this motion. Pl.'s Surreply 4. The wording of Plaintiff's request most closely conforms to Rule 15(b)(2), which states, under the heading "Amendments During and After Trial For Issues Tried by Consent,"

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Plaintiff's request for amendment here is occurring before trial, so Rule 15(b)(2) is inapplicable. Rule 15(a)(2), under the heading "Amendments Before Trial," is more appropriate: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, "after the deadlines provided by a scheduling order have passed, the good cause standard [of Rule 16(b)] must [also] be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D. W. Va. 1995). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* at 254 (emphasis omitted) (internal quotation marks omitted). Here, Plaintiff offers no good cause for amending her Complaint more than one year after the Scheduling Order's September 11, 2012, deadline for filing amended pleadings. Thus, her motion to "conform the pleadings to the evidence" is **DENIED**.

The applicable statute of limitations for a cause of action under fraud is the two-year, catch-all statute of limitations period contained in West Virginia Code § 55-2-12. *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W. Va. 578, 583 (2002) ("Under West Virginia law, claims in tort for negligence, professional negligence, and misrepresentation (fraudulent or negligent) are governed by a two-year statute of limitation." (citing W. Va. Code § 55-2-12)).

Under West Virginia law, the essential elements of a fraud claim are "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; [3] that plaintiff relied upon it and was justified under the circumstances in relying upon it; and [4] that he was damaged because he relied upon it." *Bowens v. Allied Warehousing Servs., Inc.*, 229 W. Va. 523, 530 (2012). For each fraud claim, the Court will identify when the requisite elements of the cause of action occurred, and then taking into account the discovery rule, the Court will determine when the statute of limitations began to run.

### a. Misrepresentation of Interest Rates

Plaintiff alleges that, during the loan-origination process, an agent of Quicken Loans misrepresented that the loan's interest rate would not rise, that Plaintiff relied upon that representation when she entered into the HELOC agreement, and that she suffered damages as a result when her interest rate increased. Plaintiff did not suffer damages—the final element of fraud to occur for this claim—until the loan's interest rate rose in July 2004. If the statute of limitations began to run at this point, then Plaintiff would be barred from filing her claim after July 2006 by the two-year statute of limitations. The discovery rule applies to this claim; however, even under the discovery rule, plaintiff knew or, by the exercise of reasonable diligence, should have known of the elements of her claim by July 2004. Since she signed the HELOC agreement in the fall of

21

2003[10]—which stated that the loan was a "variable rate plan" and that "[a]n increase or decrease to the [annual percentage rate] and the Daily Periodic Rate will increase or decrease your Minimum Monthly Payment"—, Plaintiff was on notice that Quicken Loans misrepresented that the loan's interest rate would not rise. Home Equity Line Agreement, Disclosure Statement and Note, Ex. 14 at 2, Quicken Loans' Mot. Summ. Judg; *see, e.g.*, *Powell v. Bank of Am., N.A.*, No. CIV.A. 2:11-00335, 2012 WL 1155130, at *5 (S.D. W. Va. Apr. 5, 2012); *see also Reddy v. Cmty. Health Found. of Man*, 171 W. Va. 368, 373 (1982) ("A person who fails to read a document to which he places his signature does so at his peril."). Once Plaintiff suffered damages in July 2004, a reasonable prudent person in Plaintiff's shoes, by the exercise of reasonable diligence, should have known of the elements of a possible cause of action. Thus, Plaintiff's fraud claim based upon the alleged misrepresentation by Quicken Loans during the loan origination process that the loan's interest rate would not rise is **DISMISSED** as time-barred.

### b.  Misrepresentation of Home Value

Plaintiff alleges that, during the loan-origination process, an agent Quicken Loans misrepresented that Plaintiff's home had a value of $84,350 when, in reality, its value was only $33,500, that Plaintiff relied upon that representation when she entered into the HELOC agreement, and that she suffered damages as a result. Upon entering into the contract with Quicken Loans in fall of 2003, all of the elements of this claim had been established. However, the discovery rule also applies to this claim.

Defendants again argue that when Plaintiff was unable to convince Quicken Loans to refinance her home in the fall of 2005, she knew or should have known the basis of her

---

[10] Plaintiff has not disputed that she signed the Home Equity Line Agreement, Disclosure Statement and Note. Ex. 14, Quicken Loans' Mot. Summ. Judg.

misrepresentation of home value fraud claim or that she was at least on notice of her claim and, thus, had an affirmative duty to further investigate. Plaintiff again responds that she did not know nor should she have known of her injury until she received a retroactive appraisal in 2011, stating that her home had been worth only $34,000 in 2003. Here, again, a reasonable fact finder could agree with Plaintiff that the discovery rule tolls the statute of limitations on this claim until Plaintiff received the results of her retroactive appraisal in 2011. For the same reasons outlined in the illegal loan claim section of this Order, Defendants are not entitled to judgment as a matter of law regarding Plaintiff's misrepresentation of home value fraud claim in Count III.

### 2.  Justifiable Reliance

Defendants further argue that Plaintiff fails, as a matter of law, to satisfy her burden of proving her "fraud claim" by clear and convincing evidence because Plaintiff fails to provide evidence of justifiable reliance. Since the misrepresentation of interest rates fraud claim has been dismissed as time-barred, the Court will only address the misrepresentation of home value fraud claim in this section.

Defendants argue that Plaintiff presents no evidence that Quicken Loans made any representations about the value of the property at all during the loan-origination process, let alone that Plaintiff relied upon such representations. Plaintiff contends that this fact is in dispute, as Plaintiff explicitly remembers reading the "indicated value of $84,305" which was provided by Quicken Loans to Plaintiff on or around November 6, 2003, several weeks before the loan's closing and that she relied upon this value in entering into the loan agreement. Pl.'s Combined Resp. 25-26 & Ex. P. Defendants then argue that all of the quotes from Plaintiff's deposition which are cited by Plaintiff in her Response are misrepresentations and point to other sections of the

23

deposition which contradict the statements Plaintiff quotes in her Response. Upon close inspection by the Court, the issue is not clear, and it is inappropriate for the Court to weigh the evidence or to determine credibility during summary judgment. This is a prime example of a genuine issue as to a material fact. Defendants are thus not entitled to judgment as a matter of law regarding Plaintiff's misrepresentation of home value fraud claim in Count III.

### D. Joint Venture / Agency Claim (Count IV)

Defendants finally argue that Plaintiff's joint venture claim (Count IV) is derivative of the other claims in the Complaint; thus, it must also fail if all of the other claims fail. Since only one claim out of the four other claims in the Complaint failed, the Court need not address this argument.

### V.    Wells Fargo's Motion for Partial Summary Judgment

In its Motion for Partial Summary Judgment, Defendant Wells Fargo argues that:

1. Joint venture and agency are not recognized, stand-alone causes of action; thus, Count IV should be dismissed (Wells Fargo's Mem. Supp. Mot. Part. Summ. Judg. 1);

2. In the alternative, Plaintiff cannot establish that Defendants were engaged in a) a joint venture or b) a principal-agent relationship—or as Wells Fargo's agent, Quicken Loans exceeded the scope of its authority—; thus, Count IV should be dismissed (*Id.* at 5-12);

3. Wells Fargo is not directly liable for Counts I, II, and III; thus, any claims dismissed against Quicken Loans must be dismissed against Wells Fargo (*Id.* at 12-14); and

4. Given that Count IV fails, Plaintiff's recovery against Wells Fargo for Counts I, II, and III is limited to enforceability of the note and the deed of trust; thus, Plaintiff cannot recover monetary damages and statutory penalties from Wells Fargo (*Id.* at 14-15).

The Court will address each argument in turn.

24

### A. Joint Venture / Agency Claims: Not Recognized, Stand-Alone Causes of Action

Wells Fargo argues that joint venture and agency are not recognized, stand-alone causes of action; thus, Count IV should be dismissed; however, Wells Fargo offers no citations in support of this claim. *Id.* at 1. The Court's analysis will, thus, be brief.

The Court assumes that Wells Fargo argues that joint venture and agency are not recognized cause of actions based on the reasoning of *Dunn*, 225 W. Va. 43. In *Dunn,* the West Virginia Supreme Court of Appeals held that "civil conspiracy [under West Virginia law] is not a *per se,* stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Id.* at 57 (emphasis in original). The argument would be that joint venture and agency, like civil conspiracy, are also theories of liability and, therefore, also not causes of action. However, subsequent cases have dealt with the issue of *Dunn*'s application to joint venture and agency claims, and have held that joint venture and agency are causes of action. The defendant in *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F. Supp. 2d 788 (S.D. W. Va. 2010), pointed to *Dunn*'s reasoning to support the argument that joint venture is not a cause of action. That court responded:

> The court is not persuaded by the analogy [the defendant] draws from *Dunn.* The language in *Dunn* does not suggest that civil conspiracy is not a permissible cause of action generally. It simply states that it is not a claim that can stand alone without claims for the underlying torts. Here, plaintiffs have alleged joint venture in addition to those claims for which it seeks to impose joint venture liability. Significantly, *Dunn* did not result in the dismissal of the civil conspiracy claim for failure to state a cognizable cause of action. Rather, the court assigned the applicable statute of limitations for the underlying tort claims to the civil conspiracy claim in order to determine whether it was time barred. Moreover, plaintiffs in several West Virginia cases have asserted joint venture claims wherein the concept of joint venture has been recognized.

25

*Id.* at 799; *see also Proffitt v. Greenlight Fin. Services*, No. 2:09-cv-1180, 2011 WL 1485576, at *4 (S.D. W. Va. Apr. 19, 2011) (finding, based on *Croye*, that joint venture and agency claims could proceed as causes of action, where the plaintiffs had also brought an unconscionable conduct claim); *Holmes v. Runyan & Assoc., Inc.*, No. 2:09-cv-0679, 2010 WL 2218698, at *2-3 (S.D. W. Va. June 2, 2010) (rejecting the analogy to *Dunn* and finding that joint venture is a permissible claim). Agency is a permissible claim as well. *Proffitt*, 2011 WL 1485576, at *4.

Thus, Wells Fargo's argument that joint venture and agency are not recognized, stand-alone causes of action—and, thus, Count IV must be dismissed—fails.

### B. Joint Venture: Merits

Wells Fargo argues that Plaintiff's evidence that Wells Fargo was engaged in a joint venture with Quicken Loans is insufficient as a matter of law.

As defined by the West Virginia Supreme Court of Appeals,

> A joint venture . . . is an association of two or more persons [or entities] to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied.

*Cunningham v. Herbert J. Thomas Mem'l Hosp. Ass'n*, 230 W. Va. 242, Syl. Pt. 10 (2012) (internal quotation marks omitted). Further,

> [I]ntrinsic to a joint venture, is the concept of mutual efforts to promote the business, the success of which would accrue to the benefit of all parties: To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise.

*Id.* at 253 (internal quotation marks omitted). "An agreement, express or implied, for the sharing of

26

profits is generally considered essential to the creation of a joint adventure . . . ." *Armor v. Lantz*, 207 W. Va. 672, 678 (2000) (internal quotation marks omitted) (declining to find a joint venture between local and visiting counsel, in part because the fee agreement involved only the payment of a flat fee from the latter to the former). Joint venturers should also have "equal control over the common commercial pursuit," though "the control required . . . is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose." *Id.* at 680 (internal quotation marks omitted). "Whether or not a joint venture exists is normally a question to be answered by the trier of fact." *Id.* at 678.

Wells Fargo argues that Plaintiff's evidence of a joint venture relationship between Wells Fargo and Quicken Loans is inadequate, such that no reasonable trier of fact could find for Plaintiff. Plaintiff alleges that Wells Fargo and Quicken Loans entered into a contract with one another—the Home Equity Seller Guide and Purchase Agreement—to engage in a single business enterprise—that is, the sale a particular first-lien HELOC product. She further alleges that Wells Fargo developed the loan program and the contract and marketed it to Quicken and that, once the agreement was entered, Wells Fargo relied on Quicken Loans' expertise to underwrite and originate the loans through delegated authority.[11] Plaintiff alleges that this relationship allowed Wells Fargo to originate loans without hiring loan origination officers; however, Wells Fargo vetted Quicken Loans before entering into the agreement with it.[12] Plaintiff also alleges that Quicken Loans had an exclusive relationship with Wells Fargo: it only sold first-lien HELOCs to Wells Fargo, and it accepted any price that Wells Fargo would pay for the loans. She alleges that

---

[11] The Court notes that the use of the wording "delegated" comes from the deposition of Gregg Maguire, who appears to be a Wells Fargo representative. Maguire Dep., Ex. Z at 58-59, Pl.'s Combined Resp.
[12] Plaintiff also alleges that Wells Fargo conducted periodic reviews of the loans which Quicken Loans sold to it in order to ensure that Wells Fargo wanted to continue the partnership; however, Plaintiff's corresponding exhibit is missing pages, and the Court did not find evidence supporting this assertion within the pages actually given.

Quicken Loans sold loans to Wells Fargo in "pools," for which the price was affected by various characteristics of the loans in the pools (including interest rate and credit scores).[13] Plaintiff further alleges that her loan was assigned to Wells Fargo on the exact day when she entered into the loan agreement.

Given that the test for joint venture is multi-factored such that no one factor controls and given the fact-intensive nature of the inquiry into whether a joint venture exits, the Court cannot say with certainty that no reasonable trier of fact could find for Plaintiff. Thus, Wells Fargo's argument that Plaintiff's evidence of a joint venture between Wells Fargo and Quicken Loans is insufficient as a matter of law fails.

### C. Agency: Merits

Wells Fargo argues that Plaintiff cannot establish that Defendants were engaged in a principal-agent relationship or that, in the alternative, Quicken Loans, as Wells Fargo's agent, exceeded the scope of its authority when it originated Plaintiff's loan.

"An agent . . . is a representative of his principal in business or [in] contractual relations with third persons . . . ." *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 154 (2010) (internal quotation marks omitted). "One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." *Id.* (internal quotation marks omitted). "[T]he burden of proving an agency [relationship] rests upon him who alleges the existence of the agency." *All Med, LLC. v. Randolph Eng'g Co., Inc.*, 228 W. Va. 634, 636 (2012). However, once a prima facie showing of the agency relationship has been made, "a principal denying agency must show that the principal neither controlled, nor had the

---

[13] In its Reply, Wells Fargo does not dispute that Wells Fargo used a formula to determine the price that it would pay to Quicken Loans to purchase a pool of loans; it merely disputes Plaintiff's characterization of this formula as proof of a profit-sharing agreement between the parties. Wells Fargo's Reply 2-3.

right to control, the [alleged agent's] work . . . ." *Harper*, 227 W. Va. at 155; *see Sanders v. Georgia-Pac. Corp.*, 159 W. Va. 621, 627 (1976) ("It is always incumbent upon one who asserts vicarious liability to make a prima facie showing of the existence of the relation of . . . principal and agent . . . . However, once a prima facie showing has been made, it is incumbent upon one who would defeat liability on the basis of an independent contractor relationship to show such fact.").

"[O]ne must examine the facts of a particular case to determine whether an agency relationship exists." *Harper*, 227 W. Va. at 154 (internal quotation marks omitted). "Proof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from facts and circumstances, including conduct." *Id.* at 154 (internal quotation marks omitted). "[W]here [a] factual conflict exists regarding the degree of control exercised and the nature of the relationship thereby created, jury resolution is warranted." *Id.* at 155 (internal quotation marks omitted).

"Since an agent acts for his principal in a representative capacity, the principal, rather than the agent, is ordinarily bound by contracts entered into on his behalf by his agent when the making of such contracts is within the scope of the agent's actual or apparent authority." *State ex rel. Clark v. Blue Cross Blue Shield of W. Virginia, Inc.*, 203 W. Va. 690, 714 (1998) (internal quotation marks omitted).

Plaintiff argues that Quicken Loans was acting as Wells Fargo's agent in originating the first-lien HELOCs, as shown by the allegations that Wells Fargo developed the program guidelines, reviewed the operations of Quicken Loans prior to entering into the agreement whereby Quicken Loans originated these loans,[14] and unilaterally set the price for all loans

---

[14] Plaintiff also maintains that Wells Fargo retained the right to sever the relationship with Quicken if it found the relationship unsatisfactory. However, she provides no citation to an exhibit to support this claim.

purchased from Quicken Loans. Plaintiff further alleges that Wells Fargo delegated authority to Quicken to underwrite loans but that it also reviewed the loans prior to purchase to ensure that they were satisfactory. In response to Wells Fargo's argument that it was not a party to the loan agreement with Plaintiff, Plaintiff responds that the loan was transferred to Wells Fargo on that same day. Also, Plaintiff notes that Quicken Loan's representative, William Banfield, testified that he could not remember Wells Fargo ever refusing to purchase a loan from Quicken pursuant to their arrangement. Wells Fargo contends that the very terms of the agreement between Wells Fargo and Quicken Loans show that this could not have been an agency relationship. The Purchase Agreement states, "Nothing in this Agreement or the Seller Guide requires Wells Fargo Home Equity to purchase any [loan] from [Quicken Loans] or for [Quicken Loans] to sell any [loan] to Wells Fargo Home Equity." Ex. G, Wells Fargo's Mem. Supp. Mot. Part. Summ. Judg. The Seller Guide states, "At no time shall [Quicken Loans] represent that it is acting as an agent for or on behalf of Wells Fargo Equity."[15] *Id.*, Ex. E at 36.

The test for an agency relationship is not clear-cut; no one factor controls. Plaintiff's evidence of implied agency is not overwhelming, but neither is it a mere scintilla. At the summary judgment stage, the Court must not weigh the evidence, and it must draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. Given the fact-intensive nature of the inquiry into whether an agency relationship exits, the Court cannot say with certainty that no reasonable trier of fact could find for Plaintiff. Thus, Wells Fargo's argument that Plaintiff's evidence of an agency relationship between Wells Fargo and Quicken Loans is

---

[15] Plaintiff does not appear to dispute these terms or the authenticity of the Purchase Agreement or the Seller Guide. Wells Fargo also argues that Quicken did not follow the terms of the underwriting guidelines given to it by Wells Fargo in originating Plaintiff's loan, thus showing that Wells Fargo did not exercise control over Quicken Loans. However, Quicken Loans disputes this fact.

insufficient as a matter of law fails.

Wells Fargo argues, in the alternative, that Quicken Loans, as Wells Fargo's agent, exceeded the scope of its authority when it originated Plaintiff's loan. This argument is based upon Wells Fargo's contention that, when using an automated valuation model ("AVM") to determine the value of the collateral to a loan originated pursuant to Wells Fargo and Quicken Loans' agreement, Quicken Loans was required by the Seller Guide to use the middle value out of the three values calculated by the AVM. Quicken Loans used the highest value in originating Plaintiff's loan. Quicken Loans disputes that the Seller Guide controls in this situation, arguing that there was likely a negotiated variance to the Seller Guide in 2003 which allowed for the use of the highest AVM value. Given that there is clearly a genuine issue as to a material fact here, the issue of whether Quicken Loans exceeded the scope of its authority when it originated Plaintiff's loan is inappropriate for summary judgment.

### D.  Indirect Liability of Wells Fargo

Wells Fargo argues that, given that it is not directly liable for Counts I, II, and III, any claims dismissed against Quicken Loans must be dismissed against Wells Fargo. This argument need not be reviewed by the Court here since Wells Fargo joined in Quicken Loans' Motion for Summary Judgment. Only one claim in Counts I, II, and III was dismissed pursuant to either Motion—the misrepresentation of interest rates fraud claim—and it was dismissed against both Quicken Loans and Wells Fargo.

### E.  Limitation of Recovery Against Wells Fargo

Wells Fargo argues that, if Count IV is dismissed, Plaintiff's recovery against Wells Fargo for Counts I, II, and III is limited to the enforceability of the note and the deed of trust. Since Count IV survives Wells Fargo's Motion for Partial Summary Judgment, this argument is moot.

## VI.     Conclusion

Plaintiff's Motion for Leave to File Surreply, ECF No. 219, is **GRANTED**. However, Plaintiff's request in her Surreply to "conform the pleadings to the evidence" is **DENIED**.

For the reasons above, Defendant Quicken Loans' Motion for Summary Judgment, ECF. No. 204, is **GRANTED in part** and **DENIED in part**. Defendant Wells Fargo Bank's Motion for Partial Summary Judgment, ECF No. 202, is **DENIED**.

Plaintiff's fraud claim that, during the loan-origination process, an agent of Quicken Loans misrepresented that the loan's interest rate would not rise and that Plaintiff relied upon that claim to her detriment is **DISMISSED** as time-barred.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        December 23, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

32